CLARK, ATTORNEY GENERAL, ET AL. *v.*
GABRIEL.

No. 572.   Decided December 16, 1968.

*Solicitor General Griswold, Assistant Attorney General Weisl, Morton Hollander,* and *Robert V. Zener* for appellants.

*Norman Leonard* for appellee.

PER CURIAM.

Appellee's draft Board rejected his claim to classification as a conscientious objector and classified him I–A. His appeals within the Selective Service System were unsuccessful.   After he was ordered to report for induction he brought an action in the United States District

Court for the Northern District of California seeking to
have his induction enjoined and to have the rejection
of his claim to conscientious objector classification de-
clared improper on the grounds that it had no basis in
fact, that the Board had misapplied the statutory defini-
tion of conscientious objector, and that the members
of the Board were improperly motivated by hostility and
bias against those who claim to be conscientious objectors.
The District Court entered a preliminary injunction pre-
venting appellee's induction until after a determination
of his claim on the merits.

In entering the preliminary injunction, the District
Court held that it had jurisdiction to hear appellee's claim
despite § 10 (b)(3) of the Military Selective Service Act
of 1967, 50 U. S. C. App. § 460 (b)(3) (1964 ed., Supp.
III), which provides:

> "No judicial review shall be made of the classifi-
> cation or processing of any registrant by local boards,
> appeal boards, or the President, except as a defense
> to a criminal prosecution instituted under section 12
> of this title, after the registrant has responded
> either affirmatively or negatively to an order to
> report for induction, or for civilian work in the case
> of a registrant determined to be opposed to par-
> ticipation in war in any form: *Provided,* That such
> review shall go to the question of the jurisdiction
> herein reserved to local boards, appeal boards, and
> the President only when there is no basis in fact for
> the classification assigned to such registrant."

Acknowledging that this statute if applicable would pre-
vent pre-induction review of appellee's classification, the
District Court held that, so applied, § 10 (b)(3) was un-
constitutional because to provide for judicial consideration
of the lawfulness of the Board's action only as a defense to
a criminal prosecution would require that appellee pursue
a "tortuous judicial adventure" so beset by "hazards"

and "penalties" as to result "in no review at all." The Government has appealed under 28 U. S. C. § 1252 which allows direct appeal to this Court of "an interlocutory or final judgment, decree or order of any court of the United States . . . holding an Act of Congress unconstitutional in any civil action . . . to which the United States . . . or any officer . . . thereof . . . is a party."

This Court has today, after full consideration, decided *Oestereich* v. *Selective Service Bd., ante,* p. 233. Because the result here is dictated by the principles enunciated in that case, it is appropriate to decide this case summarily, reversing the District Court.

In *Oestereich* the delinquency procedure by which the registrant was reclassified was without statutory basis and in conflict with petitioner's rights explicitly established by the statute and not dependent upon an act of judgment by the Board. Oestereich, as a divinity student, was by statute unconditionally entitled to exemption. Here, by contrast, there is no doubt of the Board's statutory authority to take action which appellee challenges, and that action inescapably involves a determination of fact and an exercise of judgment. By statute, classification as a conscientious objector is expressly conditioned on the registrant's claim being "sustained by the local board." 50 U. S. C. App. § 456 (j) (1964 ed., Supp. III).

Here the Board has exercised its statutory discretion to pass on a particular request for classification, "evaluating evidence and . . . determining whether a claimed exemption is deserved." *Oestereich* v. *Selective Service Bd., supra,* at 238. A Local Board must make such a decision in respect of each of the many classification claims presented to it. To allow pre-induction judicial review of such determinations would be to permit precisely the kind of "litigious interruptions of procedures to provide necessary military manpower" (113 Cong. Rec. 15426 (report by Senator Russell on Conference Committee ac-

tion)) which Congress sought to prevent when it enacted § 10 (b)(3).

We find no constitutional objection to Congress' thus requiring that assertion of a conscientious objector's claims such as those advanced by appellee be deferred until after induction, if that is the course he chooses, whereupon habeas corpus would be an available remedy, or until defense of the criminal prosecution which would follow should he press his objections to his classification to the point of refusing to submit to induction. *Estep* v. *United States,* 327 U. S. 114 (1946); *Falbo* v. *United States,* 320 U. S. 549 (1944).

The motion of appellee for leave to proceed *in forma pauperis* is granted. The decision of the District Court is reversed, and the case remanded for issuance of an order dissolving the preliminary injunction and dismissing the action.

MR. JUSTICE BRENNAN, MR. JUSTICE STEWART, and MR. JUSTICE WHITE concur in the judgment of the Court for the reasons stated in MR. JUSTICE STEWART's dissenting opinion in *Oestereich* v. *Selective Service Bd., ante,* p. 245, decided today.

MR. JUSTICE BLACK would note probable jurisdiction and set the case down for argument.

. MR. JUSTICE DOUGLAS, concurring.

The evidence in this case, which I have set forth in an Appendix, makes plain, as the Court states, that the question whether the registrant should be classified as a conscientious objector turns on the weight and credibility of the testimony. I therefore agree that § 10 (b)(3) of the Military Selective Service Act of 1967 precludes review of the action of the Board at this pre-induction stage.

I would take a different view if this were a case where a registrant was moved from a CO (conscientious objector) classification to I–A because he made a speech, unpopular with the Board.

This would also be a different case if the registrant were a member of an institutionalized group,[1] such as the Quakers, whose opposition to war was well known and the registrant, though perhaps unpopular with the Board, was a bona fide member of the group. Then, too, a Board would act in a lawless way [2] if it moved a registrant from a CO classification to I–A and disregarding all the evidence denied him a CO classification.

But in my view it takes the extreme case where the Board can be said to flout the law, as it did in *Oestereich* v. *Selective Service Bd., ante,* p. 233, to warrant pre-induction review of its actions.

### APPENDIX TO OPINION OF DOUGLAS, J., CONCURRING.

Charles Gabriel is 23 years old, son of a white father and Negro mother. He graduated from Berkeley High School, attended San Francisco State College for two years before being dropped; for the following year he tried to regain entrance to that College by attending its "Extension School"; but when he was denied re-admission, he spent the next year at a City College from which he graduated. He registered with the Selective Service in 1963 at the age of 18. Two years later, at the age of 20, he applied for CO status. He was denied reclassifi-

---

[1] Membership in a religious group is not, of course, the sole means of getting classification as a conscientious objector, as the exemption extends to anyone who has those conscientious objections, even though he is not associated with others. See *United States* v. *Seeger,* 380 U. S. 163, 172–173.

[2] See White, Processing Conscientious Objector Claims: A Constitutional Inquiry, 56 Calif. L. Rev. 652, 660–667 (1968).

cation, and his *three* requests for a "personal appearance" before the board over a nine-month period were disregarded. Finally, he was given an opportunity for a personal appearance after he complained to the State Headquarters. He was denied reclassification.

(A) *Gabriel's Letter of August 13, 1965.*

In 1965, after he obtained a copy of Form 150 by which a registrant files for conscientious objector status, Gabriel filled out the form and sent his local draft board an accompanying letter explaining his conscientious convictions:

> "As a Negro I firmly believe the United States Government has willfully let the Negro be deprived of his rights therefore the debt of forced service claimed arbitrarily from all eligible men for the purpose of fighting for the United States rights is in the Negroes case void. Because he has not been given the rights the United States fights for on its citizens behalf.
>
> .    .    .    .    .
>
> "My beliefs are superior to my human relations with the U. S. government and duties coming out of my beliefs are superior to duties stolen from me by the U. S. government.
> "I have voiced my opinions and beliefs freely. In Berkeley H. S. in class in fall 1962 during the Cuban crisis I made a speech against U. S. action in Cuba otherwise I haven't bothered to record all the times I said what I thought.
> "[listing activities]: active CORE member (1961–2) March on Wash DC 1963; Demonstrated against HUAC in Wash. D.C. 1959 I was in and helped organize the Freedom Week Play in Berkeley H. S. 1963. Demonstrated in 1960 in support of sit-ins against southern Wolworth Stores.
>
> .    .    .    .    .

"All through my life I have been in contact with people who did not believe in war or killing; who believed the U.S. government and system was unjust. My parents their friends, my friends, numerous books by liberal or leftist writers . . . have been things that make me what I am."

(B) *Gabriel's Official Summary of his Personal Appearance.*

After his personal appearance, Gabriel filed a copy of his summary of the hearing, as provided by Selective Service regulations.

"This is a summary of my personal appearance before you on Thursday, May 19, 1966. . . . The youngest, forty to forty-five years old was fairly friendly during the meeting; the oldest seemed neutral; the other three seemed fairly unfriendly. . . . The oldest man referred to my letters as 'very pointed, belligerent.' I said, jokingly, that I wrote the letters with the help of Ben Seaver and Alex Sliszka and they should share the blame. Then there was an unfriendly comment about Sliszka and Seaver. The youngest man read my statement that said I was a Negro and didn't think I had my rights. He asked if this wasn't the basis of most of my case. I said, 'No. It was only part of it.' . . . Then one man asked me if I was trying to 'beat the game.' . . . I said that there were easier ways to avoid the draft and gave some examples. . . . The man who asked me to reread my written statement said, i. e. wasn't that answer subversive. I said 'maybe so but I believe I'm right.' . . . The oldest man asked me if I'd fought in high school. I answered, 'No' and he said, 'You must have been a real good boy.' He then asked me between two and four times to 'eradicate' the thought from my mind that I had gotten unfair treatment from the local board."

(C) *Department of Justice Résumé.*

After being denied CO status, Gabriel appealed. And as is customary in such appeals, the Justice Department conducted an investigation into the sincerity of his beliefs. The following is a résumé of the investigating officer's report.

"A representative of Berkeley High School . . . stated that he was a 'quiet rebel' but was mature for his age. . . . Another representative at Berkeley High School stated that . . . she recalls that he demonstrated a high regard for the individual . . . and was extremely conscious of the role in society of the American Negro. It was advised that the registrant's mother . . . and step-father have been politically active in such organizations as the Congress for Racial Equality. . . . A representative of the Buildings and Grounds Department, San Francisco State College, advised that the registrant . . . had a reputation of being involved in any movement which has doings with anti-war demonstrations or activities. This representative stated that he never actually witnessed the registrant in these activities but it is general knowledge among employees around the campus. . . . An official of the Magic Theatre, San Francisco, California advised that . . . the registrant is against war and against military service. It was further stated that the registrant has discussed the Vietnam war and considers it unjust. . . . One person interviewed in San Francisco, California advised that she has resided here in an apartment building for the last four or five years. She stated as she recalls, a young Negro male resided with a young woman in an apartment in this building about a year ago. She believes this individual may have been the registrant. . . . A reference stated that he has known

the registrant since about 1963 . . . when they both were students at San Francisco State College. . . . He further stated that the registrant could well be a communist, however, they have never discussed this. He advised that he is aware that the registrant's mother and father are very much against war and they are active in movements which are against war. He further stated that the registrant is also active in these movements and organizations, however, he did not know the names of these organizations. It was also stated that the registrant has mentioned that he is active in anti-war groups and he believes he has participated in anti-war marches. . . . Another reference stated . . . that when [the registrant] went to report for his armed forces physical examination he observed an anti-draft demonstration occurring in front of the physical facilities and felt compelled to take part in the demonstration, which he did."

(D) *Department of Justice Recommendation.*

After conducting its investigation, the Department of Justice filed a "recommendation" with the local board, suggesting that Gabriel be denied CO status:

"He said that he is definitely not a communist. . . . The registrant advised that he is, and has been, consistently nonviolent, and that he has never been a member of any aggressive anti-war demonstrations. He said that, although he was a member of the Vietnam Day Committee and the War Resistance League, and has participated in peace marches, he has always participated in a passive or peaceful manner."