406 F.2d 636
 Timothy J. BREEN, Plaintiff-Appellant,
v.
SELECTIVE SERVICE LOCAL BOARD NO. 16, BRIDGEPORT,
CONNECTICUT and Brig. Gen.Ernest E. Novey,
Individually and as Director of the
Selective Service Systemfor
Connecticut,
Defendants-
Appellees.
 No. 47, Docket 32345.
 United States Court of Appeals Second Circuit.
 Argued Sept. 17, 1968.
Decided Jan. 10, 1969.
 
 Emanuel Margolis, Stamford, Conn. (Lawrence P. Weisman, Bridgeport, Conn.), for plaintiff-appellant.
 Jon O. Newman, U.S. Atty., Hartford, Conn., for defendants-appellees.
 Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 Plaintiff Breen, a 20-year old resident of Connecticut, is a registrant under the Selective Service System. He had held a II-S (student) deferment, 50 U.S.C. App. 456(h)(1), 32 C.F.R. 1622.25, because of being an undergraduate at the Berkeley School of Music in Boston. In mid-November, 1967, he delivered his Selective Service Registration Certificate to a clergyman in Boston for the purpose of protesting United States involvement in the war in Vietnam. On January 9, 1968, his Local Board mailed him a notice, 32 C.F.R. 1642.4(b), that he had been declared a delinquent for failure to have the Certificate in his possession as required by 32 C.F.R. 1617.1. At the same time the Local Board reclassified him from Class II-S to Class I-A because of his delinquency, pursuant to 32 C.F.R. 1642.12, which authorizes such reclassification 'regardless of other circumstances.' These actions of the Board were in line with a memorandum and a letter dated respectively October 24 and 26, 1967, from the Director of Selective Service. The Local Board ordered Breen to report for a physical examination on January 29 but subsequently postponed this. Apparently Breen did not seek a personal appearance under 32 C.F.R. 1642.14. However, he appealed his reclassification under that same section.
 
 
 2
 In February 1968 Breen brought this action in the District Court for Connecticut, seeking a judgment that the declaration of his delinquency and his reclassification were null and void, an injunction against his induction into the armed forces, and $20,000 damages. Although jurisdiction was predicated on 28 U.S.C. 1331, 1343 and 2201, only the first could afford a basis.[1] The Government moved to dismiss the complaint and Breen to have a three-judge court convoked. Believing that the court was deprived of jurisdiction by 8(c) of the Military Service Act of 1967, 81 Stat. 104, which amended 10(b)(3) of the Selective Service Act, 50 U.S.C. App. 460(b)(3), by including the provision set forth in the margin,[2] Chief Judge Timbers, in a considered opinion, 284 F.Supp. 749 granted the Government's motion and denied Breen's.
 
 
 3
 After the decision of the district court, Breen's administrative appeal was denied and he was ordered to report for induction, but the order was stayed pending the determination of this appeal. When the appeal reached us in September, we deferred decision because the Supreme Court had set for early argument Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402, which also involved the applicability and validity of the amendment to 10(b)(3) although in a somewhat different context.
 
 
 4
 We now have the benefit of the court's decisions in Oestereich, 393 U.S. 233, 89 S.Ct. 414 (1968), holding the amendment inapplicable to a claim by an exempt theological student that the delinquency regulations could not be applied to him, and in Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), holding the amendment valid and applicable to the rejection of a claim of conscientious objection. While neither decision reads precisely on the issue here tendered, applying their teaching as best we can, we affirm the judgment of the district court.
 
 
 5
 Oestereich, a student at a theological school preparing for the ministry, who had been declared delinquent for having turned in his registration certificate, was entitled under 6(g) to an exemption from military service and not merely to a deferment of his obligation. The element critical to the holding that the amendment to 10(b)(3) was inapplicable in his case was the Court's view that:
 
 
 6
 Once a person registers and qualifies for a statutory exemption, we find no legislative authority to deprive him of that exemption because of conduct or activities unrelated to the merits of granting or continuing that exemption.
 
 
 7
 Since the Board's action in depriving a divinity student of the exemption which was his 'statutory right' was therefore 'blatantly lawless' and 'involve(d) a clear departure by the Board from its statutory mandate,' to read the statute as forcing Oestereich to choose between induction and a criminal prosecution before he could vindicate his rights would be 'to construe the Act with unnecessary harshness.'
 
 
 8
 In contrast, 6(h)(1) of the Selective Service Act, 50 U.S.C. App. 456(h)(1), dealing with the deferment of undergraduates, on which Breen relies, directs:
 
 
 9
 Except as otherwise provided in this paragraph, the President shall, under such rules and regulations as he may prescribe, provide for the deferment from training and service in the Armed Forces of persons satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and who request such deferment. While 32 C.F.R. 1622.25 provides for the placing of undergraduates in Class II-S, 1642.12, promulgated by the President on July 4, 1967, Ex. Order No. 11360, 32 F.R. 9794, authorizes their removal from that classification on a declaration of delinquency. Arguments that this provision offends the 'Except as otherwise provided' language with which 6(h)(1) begins or that the 'rules and regulations' must be relevant to the deferment (e.g., the obraining of certain grades), collide with the fact that in the last sentence of 6(h)(1)[3] Congress expressly recognized the longstanding provision for reclassification and early induction of delinquents with respect to student deferments. This is clear evidence that Congress did not suppose that reclassification pursuant to the delinquency regulations would violate the provision of 6(h)(1) that Student deferments provided for under this paragraph may be substantially restricted or terminated by the President only upon a finding by him that the needs of the Armed Forces require such action.
 
 
 10
 The conflict between statute and regulations that arose in Oestereich is therefore not present here.
 
 
 11
 We consequently find no sufficient justification in this case for denying to the words of the 1967 amendment to 10(b)(3), see fn. 2, the meaning which they so plainly have and which the Committee reports, set forth in the dissenting opinion in Oestereich, 393 U.S. at 248, 89 S.Ct. at 422, show they were intended to have. As recognized in Mr. Justice Harlan's concurring opinion in Oestereich, 393 U.S. at 245, fn. 7, 89 S.Ct. at 420, 'Section 10(b)(3) was likely precipitated by the Second Circuit's well publicized decision in Wolff v. Selective Service Local Board No. 16, 372 F.2d 817 (1967).' See, to the same effect, the dissenting opinion of Mr. justice Stewart, joined by Justices Brennan and White, 393 U.S. at 247 & fn. 5, 89 S.Ct. at 422. If Congress meant to withhold the preinduction review we had granted in Wolff to students enjoying deferments who had been declared delinquent for acts not within the regulations, it surely must have intended to do this where, as here, there has been an undisputed violation of 32 C.F.R. 1617.1 requiring continued possession of a certificate-- a requirement which the Supreme Court has characterized as serving 'a legitimate and substantial purpose in the system's administration.' United States v. O'Brien, 391 U.S. 367, 378, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). As said by Mr. Justice Douglas, the author of Oestereich, in his concurring opinion in Clark v. Gabriel, supra, 393 U.S. at 260, 89 S.Ct. at 427, 'it takes the extreme case where the Board can be said to flout the law, as it did in Oestereich v. Selective Service, etc., 393 U.S. 233, 89 S.Ct. 414, to give preinduction review of its actions.'
 
 
 12
 The argument that the Board 'flouts the law' so as to require preinduction review of its actions whenever its proceedings are claimed to violate the Constitution, although these were consistent with the Selective Service Act, was rejected sub silentio in Gabriel. Although the opinion in that case did not specifically refer to any constitutional issues raised, the Government's Jurisdictional Statement shows that Gabriel asserted violations of First and Fifth Amendment rights, and also apparently claimed that the Selective Service system involves unconstitutional delegations of the legislative, executive, and judicial powers. The Court could readily have passed only on such of Gabriel's points as did not require inquiry into the findings of fact or exercise of discretion of the individual Board. Instead, acting under 10(b) (3), it refused to consider any of Gabriel's claims, saying
 
 
 13
 We find no constitutional objection to Congress' thus requiring that assertion of a conscientious objector's claims such as those advanced by appellee be deferred until after induction, if that is the course he chooses, whereupon habeas corpus would be an available remedy, or until defense of the criminal prosecution which would follow should he press his objections to his classification to the point of refusing to submit to induction.
 
 
 14
 We do not intimate that Breen's claims that his reclassification because of the return of his certificate violated his First Amendment rights to protest, as to which see United States v. O'Brien, supra, and his Fifth Amendment rights to adequate standards and notice, are not substantial. We hold only that they must be asserted in the ways to which Congress plainly limited him, to wit, refusal to submit to induction or post-induction habeas corpus.
 
 
 15
 It remains only to add that the decision that three-judge court was not required was correct. Breen did not seek an injunction 'restraining the enforcement, operation or execution' of 10(b)(3), 28 U.S.C. 2282; rather the Government raised that statute as a bar. See International Ladies' Garment Workers' Union v. Donnelly Garment Co., 304 U.S. 243, 251, 58 S.Ct. 875, 82 L.Ed. 1316 (1938); Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); Petersen v. Clark, 285 F.Supp. 698 (N.D.Cal.1968).
 
 FEINBERG, Circuit Judge (dissenting):
 
 16
 I respectfully dissent.
 
 
 17
 The underlying issue in plaintiff's action is whether the Selective Service delinquency procedure, as applied to a registrant who is delinquent because he protests national policy, is proper. It is now clear that such delinquency reclassification is not lawful if the registrant so treated happens to qualify for a statutory exemption. In Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), five members of the Supreme Court characterized use of the Delinquency procedure in that situation as 'basically lawless,' making the local draft boards 'free-wheeling agencies meting out their brand of justice in a vindictive manner.'[1] A sixth member of the Court, Mr. Justice Harlan, concurred in the holding that the delinquency reclassification in that case was improper and characterized as 'nonfrivolous' the arguments made there that the entire procedure was unconstitutional 'punishment.' Id. 393 U.S. at 244, n. 6, 89 S.Ct. at 420. Therefore, there can be no doubt that the basic question that plaintiff seeks to raise-- whether he was ordered inducted by an illegal procedure-- is substantial, even though he has not yet been able to convince a court that it should decide the issue.
 
 
 18
 The precise question before us is whether plaintiff is now entitled to such a judicial forum without making the harsh and risky choice of defying induction (and inviting criminal prosecution) or of submitting to induction and attempting to obtain habeas corpus. In Oestereich, the Court construed section 10(b)(3) of the Military Selective Service Act of 1967, 50 U.S.C. App. 460(b) (3), to relieve the registrant of that dilemma; in Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (U.S.Dec. 16, 1968), it did not. As an inferior federal court, we must attempt to follow the teaching of these cases, as my brothers point out. However, doing so leads me to a contrary result.
 
 
 19
 It is true that Oestereich involved an exemption for divinity students, which the local board 'blatantly' disregarded, while here plaintiff relies on a deferment for undergraduates. But that deferment is quite plain in the statute; section 6(h)(1) of the Military Selective Service Act of 1967, 50 U.S.C. App. 456(h)(1), provides:
 
 
 20
 Except as otherwise provided in this paragraph, the President shall, under such rules and regulations as he may prescribe, provide for the deferment from training and service in the Armed Forces of persons satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and who request such deferment. A deferment granted to any person under authority of the preceding sentence shall continue until such person completes the requirements for his baccalaureate degree, fails to pursue satisfactorily a full-time course of instruction, or attains the twenty-fourth anniversary of the date of his birth, whichever first occurs. Student deferments provided for under this paragraph may be substantially restricted or terminated by the President only upon a finding by him that the needs of the Armed Forces require such action. No person who has received a student deferment under the provisions of this paragraph shall thereafter be granted a deferment under this subsection, nor shall any such person be granted a deferment under subsection (i) of this section if he has been awarded a baccalaureate degree, except for extreme hardship to dependents (under regulations governing hardship deferments), or for graduate study, occupation, or employment necessary to the maintenance of the national health, safety, or interest. Any person who is in a deferred status under the provisions of subsection (i) of this section after attaining the nineteenth anniversary of the date of his birth, or who requests and is granted a student deferment under this paragraph, shall, upon the termination of such deferred status or deferment, and if qualified, be liable for induction as a registrant within the prime age group irrespective of his actual age, unless he is otherwise deferred under one of the exceptions specified in the preceding sentence. As used in this subsection, the term 'prime age group' means the age group which has been designated by the President as the age group from which selections for induction into the Armed Forces are first to be made after delinquents and volunteers.
 
 
 21
 Thus, Congress has explicitly made it national policy to provide deferments for 'persons satisfactorily pursuing a full-time course of instruction at a college,' which continue until the student reaches the age of 24 or obtains his degree, unless his studies are unsatisfactory. Moreover, such deferments are not to be 'substantially restricted or terminated' unless the President finds 'that the needs of the Armed Forces require such action.' This is about as clear a statement of congressional intent as you can get, made all the more emphatic by its appearance in the Selective Service Act for the first time in the 1967 amendments.[2]
 
 
 22
 I cannot satisfactorily distinguish this case from Oestereich. Each involves a clear statutory grant by Congress to a specified class of registrants of the right not to be inducted into military service, although in this case the right is referred to as a deferment rather than an exemption. The Court's observations in Oestereich are therefore equally apt here:
 
 
 23
 Since the exemption granted divinity students is plain and unequivocal and in no way contested here, and since the scope of the statutory delinquency concept is not broad enough to sustain a revocation of what Congress has granted as a statutory right, or sufficiently buttressed by legislative standards, we conclude that pre-induction judicial review is not precluded in cases of this type.
 
 
 24
 393 U.S. at 238, 89 S.Ct. at 417. Indeed, the applicability of the reasoning of Oestereich to the situation here was clearly foreseen by the three dissenting Justices in that case.[3]
 
 
 25
 In reaching a contrary view, my brothers rely on that portion of section 6(h) (1) which qualifies the statutory command for student deferments as subject to 'such rules and regulations as (the President) may prescribe.' But that clause is itself qualified by the introductory phrase in the first sentence, 'Except as otherwise provided in this paragraph.' The paragraph does, as already noted, otherwise provide both that student deferments shall continue until the occurrence of specified events and also that such deferments shall not be 'substantially restricted' by the President unless he finds that 'the needs of the Armed Forces' require it.[4] The former limitation is not relied on by the Government. As to the latter, I see no such finding in Executive Order No. 11360, 32 Fed.Reg. 9787, 9794 (1967), relied on by the majority. Moreover, it would seem that authority to promulgate 'rules and regulations' would extend only to those which would sensibly be relevant to the deferment, e.g., the obtaining of certain grades, referred to by the majority, the furnishing of proof of bona fide undergraduate status, or the definition of a 'full-time' student. My brothers also rely on the fleeting reference in the last sentence of section 6(h)(1) to 'delinquents,' which does not deserve the significance attributed to it. The Selective Service System made a similar argument in Oestereich without success. Finally, the fact that the requirement of continued possession of a registration certificate serves a legitimate purpose is beside the point. The underlying issue is whether the proper agency to 'punish' transgressions of that rule is a court, under traditional safeguards, or an unfettered draft board, consisting of 'part-time uncompensated members,' in a proceeding essentially 'nonjudicial.' 393 U.S. at 243, 89 S.Ct. at 419 (Harlan, J.).
 
 
 26
 The foregoing analysis of Oestereich and its effect on thes case is strengthened by close examination of the Court's decision on the same day in Clark v. Gabriel, supra.[5] In that case, the registrant's draft board rejected his claim to classification as a conscientious objector; the Court held that section 10(b)(3) prevented review until after induction or criminal prosecution. The Court in Gabriel distinguished Oestereich as follows, 393 U.S. at 258, 89 S.Ct. at 426:
 
 
 27
 In Oestereich the delinquency procedure by which the registrant was reclassified was without statutory basis and in conflict with petitioner's rights explicitly established by the statute and not dependent upon an act of judgment by the board. Oestereich, as a divinity student, was by statute unconditionally entitled to exemption. Here, by contrast, there is no doubt of the board's statutory authority to take action which appellee challenges, and that action inescapably involves a determination of fact and an exercise of judgment. By statute, classification as a conscientious objector is expressly conditioned on the registrant's claim being 'sustained by the local board.' * * *
 
 
 28
 Here the board has exercised its statutory discretion to pass on a particular request for classification, 'evaluating evidence and * * * determining whether a claimed exemption is deserved.' Oestereich v. Selective Service System Local Board No. 11, 393 U.S. p. 238, 89 S.Ct. p. 416. A local board must make such a decision in respect of each of the many classification claims presented to it. To allow preinduction judicial review of such determinations would be to permit precisely the kind of 'litigious interruptions of procedures to provide necessary military manpower' * * * which Congress sought to prevent when it enacted 10(b), (3).
 
 
 29
 The differences between this case and Gabriel are clear. In Gabriel, the registrant's right to his classification depended 'upon an act of judgment by the board.' No such discretionary decision is involved here. Section 6(h)(1) contains no similar condition that a registrant's claim for student deferment be 'sustained by the local board'; in any event, there is no doubt that Breen was a full-time student at a college. Therefore, whether the registrant in Gabriel raised constitutional issues, as the majority states, is not crucial. What is more significant is that in Gabriel, unlike both this case and Oestereich, the action of the draft board 'inescapably involves a determination of fact and an exercise of judgment.'
 
 
 30
 In short, I believe this case is governed by the reasoning in Oestereich. If the registrant there was entitled before induction to a judicial hearing on his claims, he should get no less here.[6] Accordingly, I would remand to the District Court for Connecticut for that purpose.
 
 
 
 [1]
 Plaintiff sought to meet the requirement of jurisdictional amount by a conclusory statement that the matter in controversy exceeds the value of $10,000 exclusive of interest and costs. See Wolff v. Selective Service Local Board No. 16, 372 F.2d 817, 826 (2 Cir. 1967). The Government has made no point about this, nor shall we
 
 
 [2]
 No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction * * *
 
 
 [3]
 The congressional committee reports on the extensive amendments to the Selective Service Act in 1967 explicitly take note of the existence of the delinquency regulations. S.Rep. No. 209, 90th Cong., 1st Sess. 3, 6; H.Rep. No. 267, 90th Cong., 1st Sess. 17, U.S.Code Cong. & Admin. News 1967, p. 1308
 
 
 [1]
 393 U.S. at 238-240, 89 S.Ct. at 417:
 We can find no authorization for that use of delinquency. Even if Congress had authorized the Boards to revoke statutory exemptions by means of delinquency classifications, serious questions would arise if Congress were silent and did not prescribe standards to govern the Boards' actions. There is no suggestion in the legislative history that, when Congress has granted an exemption and a registrant meets its terms and conditions, a Board can nonetheless withhold it from him for activities or conduct not material to the grant or withdrawal of the exemption. So to hold would make the Boards free-wheeling agencies meting out their brand of justice in a vindictive manner. Once a person registers and qualifies for a statutory exemption, we find no legislative authority to deprive him of that exemption because of conduct or activities unrelated to the merits of granting or continuing that exemption. The Solicitor General confesses error on the use by Selective Service of delinquency proceedings for that purpose. We deal with conduct of a local Board that is basically lawless. It is no different in constitutional implications from a case where induction of an ordained minister or other clearly exempt person is ordered (a) to retaliate against the person because of his political views or (b) to bear down on him for his religious views or his racial attitudes or (c) to get him out of town so that the amorous interests of a Board mamber might be better servied. See Townsend v. Zimmerman, 6 Cir., 237 F.2d 376. In such instances, as in the present one, there is no exercise of discretion by a Board in evaluating evidence and in determining whether a claimed exemtion is deserved. The case we decide today involves a clear departure by the Board from its statutory mandate. To hold that a person deprived of his statutory exemption in such a blatantly lawless manner must either be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in a criminal prosecution is to construe the Act with unnecessary harshness. As the Solicitor General suggests, such literalness does violence to the clear mandate of 6(g) governing the exemption. Our construction leaves 10(b)(3) unimpaired in the normal operations of the Act.
 
 
 [2]
 See Davis & Dolbeare, Selective Service: Present Impact and Future Prospects, 1967 Wis.L.Rev. 892, 909; Note, Changes in the Draft: The Military Selective Service Act of 1967, 4 Colum.J.L. & Soc.Prob. 120, 136-37 (1968). Prior to 1967, the President was authorized-- not required-- to provide for such deferment of students as was 'found to be necessary to the maintenance of the national health, safety, or interest,' former 50 U.S.C. App. 456(h); by regulation the deferment of individual students was left to the discretion of the local board, see former 32 C.F.R. 1622.25
 
 
 [3]
 The dissenters wrote, 393 U.S. at 249 n. 9, 89 S.Ct. at 423:
 The Court seems to limit its holding to statutory 'exemptions'; yet 'deferments' may just as 'plainly' preclude a registrant's induction. See, e.g., 50 App.U.S.C. 456(h)(1) (Supp. III, 1968); 32 CFR 1622.25 (1968) (full-time college students).
 Cf. Kimball v. Selective Service Local Board No. 15, 283 F.Supp. 606, 608 (S.D.N.Y.1968) (enjoining induction of plaintiff): 'It is submitted that the distinction attempted to be drawn by the Government between an 'exemption' under 456(g) and a 'deferment' under 456(h) is one without legal significance.' A notice of appeal from a similar subsequent order involving a different plaintiff in the same case has been filed in this court. No. MR 2219, 2d Cir., Aug. 13, 1968.
 
 
 [4]
 See Note, Changes in the Draft: The Military Selective Service Act of 1967, 4 Colum.J.L. & Soc.Prob. 120, 140 n. 158 (1968)
 
 
 [5]
 This was a per curiam opinion by four mambers of the Court. Mr. Justice Douglas filed a separate concurrence, the dissenters in Oestereich concurred for the reasons they expressed in that case, and Mr. Justice Black thought that probable jurisdiction should be noted and the case set down for argument
 
 
 [6]
 It should be noted that the same result would be reached if the approach of Mr. Justice Harlan in Oestereich were adopted. Plaintiff here, like the plaintiff in Oestereich, contends 'that the procedure employed by the board is invalid on its face.' 393 U.S. at 241, 89 S.Ct. at 418. Similarly, such a claim
 does not invite the court to review the factual and discretionary decisions inherent in the 'classification or processing' of registrants, and does not, therefore, present opportunity for protracted delay. * * * (It) presents an issue beyond the competence of the Selective Service boards to hear and determine.
 393 U.S. at 241, 89 S.Ct. at 418.