Lawrence A. RUNNELS, Petitioner,

v.

LOCAL BOARD 102, Frederic David Kehl, Robert G. Bierer, George Henry Davis, Sr., Jack Harrison Hearst, Napoleon Williams, Lewis B. Hershey, Col. Ralph McCain, Respondents.

No. 69 C 302(2).

United States District Court
E. D. Missouri, E. D.

Oct. 24, 1969.

Louis Gilden, St. Louis, Mo., for petitioner.

Daniel Bartlett, Jr., U. S. Atty., and Daniel R. O'Neill, Asst. U. S. Atty., St. Louis, Mo., for respondents.

## MEMORANDUM

MEREDITH, District Judge.

Petitioner is Lawrence A. Runnels who is a citizen of Missouri and a registrant of Local Board 102 of the Selective Service System, Ferguson, Missouri. Respondents are Local Board 102; the members of Local Board 102, Frederic David Kehl, Robert G. Bierer, George Henry Davis, Sr., Jack Harrison Hearst, and Napoleon Williams; Lewis B. Hershey, National Director of Selective Service System, and Colonel Ralph McCain, State Director of Selective Service System, all of whom are citizens of the United States. The petition is for an injunction and writ of mandamus ordering the respondents to cancel petitioner's order of induction and to classify him I–S. Petitioner has moved for summary judgment. Respondents have moved to dismiss. There is no dispute as to the facts.

Petitioner attended college at St. Louis University from September 1961 until June 1965, receiving a B.A. in June 1965. He then attended New York University School of Law from September 1965 until June 1968, receiving a J.D. at that time. Petitioner was classified II–S from April 7, 1964, and this was continued from time to time until July 1, 1968. He was classified I–A on October 1, 1968, until November 12, 1968, when he was granted a deferment because of the birth of a child and was then classified II–A until March 11, 1969. He was reclassified I–A on March 11, 1969; he requested a change of classification, which was denied by the Local Board, and appealed this denial to the State Board, which denied his appeal on August 30, 1969. In August 1969 Runnels enrolled in the graduate program in law at Washington University. He received a formal letter of acceptance on September 2, 1969, and began full-time class work on September 5, 1969. The law school gave the Local Board notice of the enrollment on September 5, 1969. He received an order of induction on September 16, 1969. Petitioner requested classification as I–S on September 17, 1969; this request was denied on September 19th. Appeals to the State and National Selective Service Headquarters were denied on September 23 and 24, 1969. Petitioner is also employed part time as an attorney with a local corporation. Petitioner was ordered to report for induction on October 13, 1969. This was continued for thirty days pending a determination by this Court of the instant case. Petitioner had been found physically qualified in 1966.

Petitioner claims he is entitled to a I–S classification under 50 App. U.S.C. § 456(i) (2). He bases jurisdiction upon 28 U.S.C. §§ 1331, 1361. Section 10(b) (3) of the Selective Service Act, 50 App. U.S.C. § 460(b) (3), provides that there shall be no judicial review of the classification or processing of any registrant. That provision of the Selective Service Act was involved in two recent Supreme Court cases. In Oestereich v. Selective Service System Local Board 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), the Court allowed pre-induction judicial review. In that case the registrant had a clear statutory right to an exemption as a divinity student. The local board classified him I–A because of his activities in anti-war demonstrations. The Court found that under the statute the claimed exemption was absolute and the Board had no discretion in granting the exemption. Section 10(b) (3) could not be used to impair the clear mandate of the statute. In Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), the Court did not allow pre-induction judicial review. The registrant had claimed classification as a conscientious objector, but was classified I–A by his board. No review was allowed because classification as a conscientious objector was within the discretion of the board. From these two cases it would seem that judicial review is possible only when the

board is refusing to grant a classification or exemption that is mandatory under the statute. If the board has any discretion, then judicial review is not possible. It is necessary in this case to determine if it is mandatory that the board give petitioner a I–S classification before this Court can have jurisdiction.

■ Petitioner's right to the deferment turns on the construction given 50 App. U.S.C. § 456(h) and (i). Subsection (h) deals with the II–S deferment; subsection (i) deals with the I–S deferment. The subsections have not been construed by the Supreme Court or the Court of Appeals for the Eighth Circuit. On graduate students four Courts of Appeals have found for the registrants. Bowen v. Hershey, 410 F.2d 962 (1st Cir. 1969), granted to second-year law student; Crane v. Hershey, 410 F.2d 966 (1st Cir. 1969), granted to second-year law student; Marsano v. Laird, 412 F.2d 65 (2d Cir. 1969), granted to second-year graduate student; Carey v. Local Board No. 2, 412 F.2d 71 (2d Cir. 1969), granted to second-year law student; Armendariz v. Hershey, 413 F.2d 1006 (5th Cir. 1969), granted to second-year law student; Foley v. Hershey, 409 F.2d 827 (7th Cir. 1969), granted to second-year graduate student. The Tenth Circuit Court of Appeals found for the board with reference to a first-year law student. Rich v. Hershey, 408 F.2d 944 (10th Cir. 1969). Petitioner maintains that the First, Second, Fifth, and Seventh Circuits apply to him; the Local Board relies upon the *Rich* case. No cases have been cited which attempt to defer a student who has completed his undergraduate work, finished a law degree, and now is attempting to take additional specialized law studies.

The petitioner claims a student deferment under 50 App. U.S.C. § 456(i). Section 456(i) (1) grants a I–S to high school students. Section 456(i) (2) reads as follows:

"Any person who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution is ordered to report for induction under this title, shall, upon the facts being presented to the local board, be deferred (A) until the end of such academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier: * * *."

There follows three provisos. The first two are not applicable as they deal with the 1948 Selective Service Act. The third proviso is the one upon which the Local Board and the *Rich* case rely to deny the classification to Runnels. It reads as follows:

"* * * or any person who hereafter is deferred under the provision of this subsection, shall not be further deferred by reason of pursuit of a course of instruction at a college, university, or similar institution of learning except as may be provided by regulations prescribed by the President pursuant to the provisions of subsection(h) of this section."

The Board claims Runnels has been deferred once by this subsection; he claims he has not been so deferred.

■ It is clear that if the petitioner has been deferred under § 456(i) (2), he is not eligible for another deferment under that section. It is his claim that graduate school deferments have their origin in § 456(h) (2). Until the 1967 Selective Service Act, all student deferments were granted under subsection (h). The 1967 Act divided (h) into two subsections. Subsection (h) (1) was a new subsection which guaranteed a student four years of college. Subsection (h) (2) was basically the old subsection which made much of the right to a deferment for a graduate student turn on the regulations. It gave priority to those students in medical school, dental school, etc., and allowed regulations for the deferment of other graduate students "found to be necessary to the maintenance of the national health, safety, or interest". The regulations allowed those graduate students enrolled on July 1,

1967, to finish one year on their graduate program. Petitioner had already graduated from college on July 1, 1967, so he is not covered by § 456(h) (1). He claims his deferment was under § 456(h) (2). It is the theory of the petitioner, and he is supported somewhat by the *Bowen, Crane, Marsano, Carey, Armendariz,* and *Foley* cases, that ·the sole source of a deferment for a graduate student is under § 456(h) (2). Petitioner further argues that he could not have been deferred under § 456(i) (2), that he is not within; the proviso, and he is entitled to deferment to finish the academic year.

The Local Board argues, and is supported by the *Rich* case, that the only way petitioner can have a graduate deferment after July 1, 1967, is under § 456(i) (2). The last sentence of that subsection reads:

"Nothing in this paragraph shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment * * * of any category or categories of students for ·such periods of time as he may deem appropriate."

The *Rich* case and the Board's argument is based upon the premise that a deferment under (h) (2) is available only to those special, enumerated groups (medicine, dentistry, etc.) and no deferments are available based upon the phrase "or other endeavors is found to be necessary to the maintenance of the national health, safety, or interest." All other graduate deferments (other than those specifically listed) come from § 456(i) (2). Petitioner's deferment necessarily comes from (i) (2), therefore, he has been deferred once under that subsection within the meaning of the provision, and is not eligible for I–S classification. The Court agrees with this position.

 This Court is of the opinion that Congress did not intend to give a carte blanche deferment to all graduate students and particularly to those who have completed their graduate studies and now

want additional deferments. Senator Russell's remarks in the Congressional Record make this clear, and are as follows:

"These provisions are substantially the same as those recommended in the Senate committee report, the difference being that the House thought that the matter should be dealt with in statute and the Senate bill proposed to leave it for implementation under Presidential regulations.

"An 'antipyramiding' provision was added in the House bill to prohibit a person who received a student deferment from receiving any other deferment except for extreme hardship to dependents. In the conference the House provisions were modified to make it clear—as it was not in their original text—that a limited number of graduate deferments for a person studying medicine, dentistry, or other subjects found necessary for the national health, safety, or interest could be authorized."

\* \* \* \* \* \*

"The conference modification also would make possible the continuation of at least a limited number of occupational deferments such as physicians or scientists, even though these persons may have received graduate deferments. In the absence of such exceptions to the 'antipyramiding' provision, the law might have been construed as prohibiting such persons from being deferred to use in civilian life the precise skills for which they had received a graduate deferment. I think the legislative history is clear that the Congress believes the number of graduate deferments should be stringently limited, but that some such deferments are important and should be permitted.

"In this connection I should mention the relevance of an existing provision of law—section 6(i) of the Universal Military Training and Service Act— which permits a college student who is ordered to report for induction to be

deferred until the end of the then current academic year. Under the conference agreement this privilege would continue for persons pursuing a baccalaureate degree. Persons who had received a deferment for graduate study in fields recommended by the National Security Council as important to the national health, safety, or interest could also be deferred until the end of the academic year current at the time they were ordered to report for induction. But graduate students in other fields—that is, those studying subjects not found to be important to the national health, safety, or interest —would not be entitled to a deferment until the end of the academic year, if they were ordered to report for induction during that year." (113 Cong. Rec. S8050, 8051 [1967])

United States Code Congressional and Administrative News states the following at page 1359, 1967, 90th Congress First Session:

"Stated briefly, the substitute language agreed upon by the conferees will provide the following:

(a) It will establish uniform criteria for all undergraduate student deferments. The language incorporates the original House recommendation in respect to undergraduate student deferments and would provide them uniformly to all registrants who requested and qualified for such a deferment. These undergraduate deferments would continue only until a registrant had received a baccalaureate degree, failed to continue to pursue a full-time course of instruction satisfactorily, or reached the age of 24, whichever occurred first. At this point, students would be required to be exposed to the hazards of induction in the 'prime age group' in the same manner as their contemporaries who had not been provided student deferments.

"(b) The language as adopted by the conferees will continue to provide the President with wide latitude in providing future deferments for graduate students in medicine, dentistry, or other subjects deemed essential to the national health, safety, or interest. The intent of the conferees is that the National Security Council will initially make the recommendations on which such graduate student deferments are based."

\* \* \* \* \* \*

"(c) The revised language relating to greater uniformity in the classification criteria provides that the President may, in carrying out the provisions of the law, recommend criteria for the classification of persons subject to induction, and

to the extent that such action is determined by the President to be consistent with the national interest, recommend that such criteria be administered uniformly throughout the United States whenever practicable."

The Selective Service Regulations, 32 C.F.R. 1622.15(b), (1969) provide:

"(b) In Class I–S shall be placed any registrant who while satisfactorily pursuing a full-time course of instruction at a college, university or similar institution of learning and during his academic year at such institution is ordered to report for induction, except that no registrant shall be placed in Class I–S under the provisions of this paragraph

(1) who has previously been placed in I–S thereunder or

(2) who has been deferred as a student in Class II–S and has received his baccalaureate degree.

"A registrant who is placed in Class I–S under the provision of this paragraph shall be retained in Class I–S

(1) until the end of his academic year or

(2) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier."

This cause will be dismissed for lack of jurisdiction.