UNITED STATES of America,

v.

David Lewis WORSTELL, Appellant.

UNITED STATES of America,

v.

Lawrence DEMANGONE, Appellant.

Nos. 17624, 17625.

United States Court of Appeals
Third Circuit.

Argued June 19, 1969.

Decided, Nov. 7, 1969.

Rehearing Denied Feb. 19, 1970.

McLaughlin, Circuit Judge, dissented.

Marjorie Hanson Matson, Pittsburgh, Pa., for appellant David Lewis Worstell.

Allan H. Cohen, Gatz, Cohen & O'Brien, Pittsburgh, Pa., for appellant Lawrence Demangone.

George E. Schumacher, Asst. U. S. Atty., Gustave Diamond, U. S. Atty., Western District of Pennsylvania, Pittsburgh, Pa., for appellee.

Before HASTIE, Chief Judge, and McLAUGHLIN and SEITZ, Circuit Judges.

OPINION OF THE COURT

HASTIE, Chief Judge.

Each of the appellants is a selective service registrant who has been convicted under section 12 of the Military Selective Service Act of 1967, 50 U.S.C. App. § 462, on a charge of knowingly refusing to submit to a lawful order requiring his induction into the armed forces. On these appeals it is contended, among other claims of error, that the orders of induction are invalid in

that they violate the mandate of section 6(h) (1) of the Act, 50 U.S.C. App. § 456(h) (1) which reads as follows:

"(h) (1) Except as otherwise provided in this paragraph, the President shall, under such rules and regulations as he may prescribe, provide for the deferment from training and service in the Armed Forces of persons satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and who request such deferment. A deferment granted to any person under authority of the preceding sentence shall continue until such person completes the requirements for his baccalaureate degree, fails to pursue satisfactorily a full-time course of instruction, or attains the twenty-fourth anniversary of the date of his birth, whichever first occurs. * * * "

At all times relevant to this controversy both appellants were duly enrolled undergraduate college students in good academic standing. Soon after his registration, each of them was classified II–S, a classification that denotes deferment under section 6(h) (1). Some time thereafter, each appellant returned his Selective Service Registration Certificate to his local selective service board in token of his opposition to the Vietnam war and his refusal to obey the selective service laws.

A Selective Service Regulation, 32 C.F.R. § 1617.1, requires that every registrant must retain his Registration Certificate in his possession at all times. In Local Board Memorandum No. 85, issued October 24, 1967, the Director of Selective Service advised all local boards as follows:

"Whenever a local board receives an abandoned or mutilated Registration Certificate or current Notice of Classification which had been issued to one of its own registrants, the following action is recommended:

"(a) Declare the registrant to be delinquent for failure to have the card in his possession.

"(b) Reclassify the registrant into a class available for service as a delinquent."

. . . . . . . . . . . . . .

Accordingly, each appellant's local board found the offending registrant "delinquent" and for that reason reclassified him I–A, available for immediate induction. An order for induction and the registrant's refusal to submit to induction after appearing at the designated place of induction followed.

■ The appellants argue that proper application of the doctrine and rationale of Oestereich v. Selective Service System Local Board No. 11, 1968, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402, requires the invalidation of their convictions. The registrant in the Oestereich case was entitled to a statutory ministerial exemption from military service under section 6(g) of the 1967 Act, 50 U.S.C. App. § 456(g), and was classified IV–D. He, like the appellants, returned his Registration Certificate to his local board, was found "delinquent" for that reason, and thereafter was reclassified and ordered to report for induction. The Court invalidated that order as violative of the statute which conferred the ministerial exemption.

The government now distinguishes the Oestereich case on the ground that the matter in controversy was an exemption while here we have a mere deferment. However, we think this is a distinction that makes no difference in the required result. The key to both situations is the fact that Congress by statute had relieved the registrant from the obligation of military service at the time he was ordered to be inducted. Whether that legislative dispensation excused him permanently or for a limited period is irrelevant. If Congress must be obeyed when it says: "Don't induct certain registrants at any time", it must as scrupulously be obeyed when it says: "Don't induct other registrants for the time being."

In this case we find the legislative mandate to be clear and unequivocal.

Section 6(h) (1), quoted above, first authorizes the deferment of full-time undergraduate students. Then, in the plainest and most explicit language it provides that "[a] deferment granted to any person under authority of the preceding sentence shall continue until such person completes the requirements for his baccalaureate degree, fails to pursue satisfactorily a full-time course of instruction, or attains the twenty-fourth anniversary of the date of his birth, whichever first occurs." What the selective service authorities have done administratively is to add another circumstance under which a student deferment may be discontinued. Whether such an addition is desirable is not for the selective service authorities or for the courts to say. Each of these registrants had in fact been granted deferment as a college undergraduate. Congress has said that such student deferment, once granted, is to continue until one of three specified changes in circumstances shall occur. Unless and until Congress shall change that unequivocal mandate, any administrative regulation or action adding another ground for terminating student deferment, as was done in these cases, is a plain violation of the statute.

We have considered that our conclusion on this issue is contrary to that reached on substantially equivalent facts by the Court of Appeals for the Sixth Circuit in Anderson et al. v. Hershey, decided April 11, 1969, 410 F.2d 492. However, the opinion in that case does not discuss what we view as the controlling sentence of section 6(h) (1) with its explicit requirement that student deferment "shall continue until" one of three specified things shall occur. Rather, it focuses upon the difference between exemption and deferment and the great public harm to be anticipated from recalcitrance of deferred persons who, unlike the exempt, are an important part of the reservoir of manpower available at some time for military service. But that argument goes only to the reasonableness of reclassifying and inducting deferred students who flout the law. Perhaps that argument will appeal to Congress and induce a modification of the controlling sentence in section 6(h) (1). But until that time we must be guided by the statute as it now reads.

The *Anderson* opinion makes the additional point that delinquency regulations have existed for many years and that Congress must have been aware of them in 1967 when it first made student deferment a statutory right. But if any presently relevant inference is to be drawn from that fact, we think that inference supports our position. If Congress had the matter of delinquency in mind when it wrote the controlling language of section 6(h) (1), its failure to include delinquency as one of the legislatively stated sole grounds upon which student deferment can be terminated indicates an intention to continue the deferment of a student until his graduation, despite his misconduct. If, as may well have occurred, Congress failed to advert to the effect of the new language in precluding the induction of deferred undergraduates who thereafter should repudiate their selective service obligations, only Congress has authority to amend section 6(h) (1) to permit the reclassification and induction of such persons.

We also have considered Breen v. Selective Service Local Board No. 16, 2d Cir. 1969, 406 F.2d 636, cert. granted, 394 U.S. 997, 89 S.Ct. 1592, 22 L.Ed.2d 775. There, as in the *Anderson* case, *supra*, a majority of the court limited the application of the doctrine of the *Oestereich* case to exemptions, as contrasted with student deferments. However, we, like Judge Feinberg, dissenting in the *Breen* case, 406 F.2d at 641, "cannot satisfactorily distinguish this case from *Oestereich*."

On the other hand, the Court of Appeals for the District of Columbia apparently would go farther than we do in invalidating any administrative action of the selective service authorities which makes certain illegal conduct of a registrant a determinant of his selective service status. National Student Ass'n v. Hershey, decided June 6, 1969, 412 F.2d

1103. The exigencies of our case do not require, nor do we make, so comprehensive a ruling. We are not concerned here with any administrative action determining or qualifying the initial granting of deferment or with any broad spectrum of situations in which misconduct is made the basis of administrative change of the registrant's status. We confine ourselves strictly to administrative termination of student deferment contrary to the provisions of section 6(h)(1).

One other circumstance which appears only in the case of the appellant Demangone requires consideration. When this registrant returned his Registration Certificate and repudiated his selective service obligations he also advised his local board in writing that "I am rejecting the privilege of deferment which my position as a college student permits me to have." Upon this basis the government now argues that Demangone has voluntarily waived the privilege of deferred status and, therefore, cannot now be heard to object to his reclassification and the resulting induction order.

However, the local board did not treat the registrant's communication as a voluntary waiver of deferment. Rather it treated the return of his Registration Card and his repudiation of selective service obligation as a wrong justifying reclassification and first priority induction as a delinquent. Had the board treated the communication as a waiver, it could properly have done no more than to classify Demangone as an ordinary I–A registrant, as distinguished from a I–A "delinquent." This distinction is material because, as was done in this case, I–A "delinquents" are called before regular I–A registrants are selected and called to fill any current quota. 32 C.F.R. § 1631.7. Thus, even if, on the theory of waiver, the registrant could not have complained of regular I–A classification, his actual reclassification and first priority selection as a I–A delinquent is not any less a violation of his statutory right to deferment.

For these reasons, and without considering other grounds for reversal urged by the appellants, the judgment will be reversed.

McLAUGHLIN, Circuit Judge (dissenting).

Admittedly, the majority opinion is wholly based on its proposition that an undergraduate student deferment is no different than a statutory exemption as a divinity student. While that theory has not been directly before the Supreme Court, the latter in Oestereich carefully confined its holding, as it states time after time, to the statutory exemption granted divinity students. There is not one word in the opinion to in any way justify the pronouncement that the ordinary student deferment, which is everything we have here, is at all similar to the conceded statutory exemption as a student of the ministry.

The very day the Oestereich opinion was filed, the same Supreme Court, with its decision in Oestereich specifically in mind, announced its Clark v. Gabriel opinion, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968). The Court said p. 258, 89 S.Ct. p. 426, "Oestereich, as a divinity student, was by statute unconditionally entitled to exemption" but unqualifiedly upheld Section 10(b)(3) of the Military Selective Service Act in precluding pre-induction review where the local board had statutory authority to exercise its judgment re a claim of conscientious objection. Clark unmistakably indicates that the local board's action in the instant appeals was sound and right under Section 10(b)(3).

Breen v. Selective Service Local Board, etc., 406 F.2d 636 (2 Cir. 1969) concerned substantially our problem. There, as before us, the registrant relied on § 6(h)(1) of the Act which reads:

"Except as otherwise provided in this paragraph, the President shall, *under such rules and regulations as he may prescribe*, provide for the deferment from training and service in the Armed Forces of persons satisfactorily pursuing a full-time course of instruc-

tion at a college, university, or similar institution of learning and who request such deferment. (Emphasis supplied.)"

In Breen, Judge Friendly in his opinion pointed out in detail that the Oestereich conflict between statute and regulations was not present. He noted that Section 10(b) (3) was likely precipitated by Wolff v. Selective Service Local Board, etc., 372 F.2d 817 (2 Cir. 1967) and said p. 639 of 406 F.2d:

"If Congress meant to withhold the preinduction review we had granted in Wolff to students enjoying deferments who had been declared delinquent for acts not within the regulations, it surely must have intended to do this where, as here, there has been an undisputed violation of 32 C.F.R. § 1617.1 requiring continued possession of a certificate—a requirement which the Supreme Court has characterized as serving 'a legitimate and substantial purpose in the system's administration.' United States v. O'Brien, 391 U.S. 367, 378, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968)."

Anderson v. Hershey et al., 410 F.2d 492 (6 Cir. April 11, 1969) is another key opinion on our precise question. The Court after exhaustive coverage .of the problem held "Finally, as we have earlier indicated, the delinquency provisions are directed toward insuring the satisfaction of the legitimate needs of the Selective Service System. We cannot say that the delinquency reclassification and induction are excessive." In United States v. Gutknecht, 406 F.2d 494 (8 Cir. January 20, 1969) the delinquency order was based on registrant's violation of the regulation that he keep the required cards in his possession at all times. In affirming the judgment of the District Court that the local board had properly found registrant delinquent, the clear differentiation from Oestereich was again stressed. United States v. Troutman, 412 F.2d 810 (8 Cir. 1969)' in affirming an excellent opinion by Chief Judge Harper in the District Court, held that the local board did not abuse its dis-

cretion by not removing registrant from delinquency status and by inducting him. The sole decision cited by the majority opinion as supporting its view is National Student Assn. v. Hershey, 412 F.2d 1103 (D.C. Cir. 1969). A careful reading of that opinion convincingly shows that it is no help whatsoever to the appellants.

These appellants were treated lawfully under the valid Selective Service law, in strict accordance with the expressed views to date of the United States Supreme Court on the particular issue. The judgment of the District Court should be affirmed.