Application of Joseph E. STEINER, Jr.

v.

The OFFICER IN COMMAND, ARMED FORCES EXAMINING AND INDUCTION CENTER AT HOUSTON, TEXAS, et al.

C. A. No. 69–H–631.

United States District Court
S. D. Texas,
Houston Division.
Oct. 7, 1969.

Mandell & Wright, John N. Barnhart, Houston, Tex., for petitioner.

Anthony J. P. Farris, U. S. Atty., (Malcolm R. Dimitt and Carl Walker, Jr., Asst. U. S. Attys.), Houston, Tex., for respondent.

MEMORANDUM AND ORDER:

HANNAY, District Judge.

Petitioner seeks pre-induction judicial review and relief from his 1–A classification of eligibility for military service. Military Selective Service Act of 1967, Title 50, U.S.C.A. App. Section 451 et

seq. Petitioner at this time urges the several remedies of injunction, habeas corpus, and the convening of a three-judge district court to determine the constitutionality of the Selective Service Act of 1967.

■ An evidentiary hearing was granted more particularly in light of Oestereich v. Selective Service Board, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (December 16, 1968) which sets out the exception to the prescribed legal remedy provided the dissatisfied selectee under Section 10(b) (3) of the Act. Section 10(b) (3) provides in pertinent part as follows:

> "No judicial review shall be made of the classification of processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, * * * after the registrant has responded either affirmatively or negatively to an order to report for induction * * *." Title 50, U.S.C.A. App. Section 460(b) (3).

Implicit in the prescribed statutory remedy is the availability of the writ of habeas corpus after acceptance of an order of induction to challenge the legality of such order.

■ The continued constitutional efficacy of Section 10(b) (3) and the remedial scheme contemplated by it was recently reiterated in Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (December 16, 1968), in a per curiam opinion free of substantive dissent. This decision on the general rule possesses a formidable lineage in prior United States Supreme Court case authority which treats the question as presented by the several national military conscription acts that have obtained in this century. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Eagles v. United States ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428. It is equally clear, and also consistent with the axiomatic principle that far reaching constitutional issues should not be judicially treated until they are clearly and inescapably presented, that the constitutionality of the present Selective Service Act is not justiciable in any purported legal controversy prior to induction or the refusal thereof. Boyd v. Clark, 393 U.S. 316, 89 S.Ct. 553, 21 L.Ed.2d 511 (January, 1969), affirming Boyd v. Clark, D.C., 287 F.Supp. 561.

### I.

■■ *Oestereich*, unlike instant case, did not involve simply and solely an administrative rejection of a desired exemption or series of exemptions. It involved, instead, the arbitrary reclassification of a subject from the status of ministerial exemption, a status specifically recognized by the Act and in that case previously established pursuant thereto, to one of military-service eligibility; and, more importantly, the Board reclassification was on grounds of supposed delinquency, to-wit, (1) failure to have this registration certificate in his possession, and (2) for failure to provide the Board with notice of his local status. This arose directly out of the selectee's return of his registration certificate to the Government "for the sole purpose of expressing dissent from the participation by the United States in the war in Vietnam." 393 U.S., at 234, 89 S.Ct., at 415. Thus the exception to non-judicial intervention prior to induction or refusal thereof with its prosecutorial consequences is a narrow one. Thus it obtains only as against arbitrary re-classification from a previously established exempt status; as against punitive, vindictive or fraudulent arbitrary Board action in the premises, see: 393 U.S., at 237–238, 89 S.Ct. 414 and the cited case of Townsend v. Zimmerman, 6 Cir., 237 F.2d 376; or as against such Board action where the provocative conduct by the previously exempt selectee is the otherwise harmless exercise of freedom of speech or assembly

as guaranteed by the 1st Amendment to the United States Constitution. See: Wolff v. Selective Service Local Board, 2 Cir., 372 F.2d 817. Moreover, it may be borne in mind that the selectee's burden of proof as against the Board's decision, when and if judicial review may be entertained, is a weighty one. Witmer v. United States, 348 U.S. 375, at 380–381, 75 S.Ct. 392, 99 L.Ed. 428, and authorities cited; Wood v. United States, 5 Cir., 373 F.2d 894, at 897.

## II.

No reading of *Oestereich*, strict or expansive, can bring instant case within its exception to otherwise premature, and to the statute pernicious, judicial intervention.

█ The record and the evidence reveal that Petitioner graduated from college on May 30, 1968. At material times prior thereto he enjoyed student deferment. Immediately thereafter he sought occupational deferment as a farmer. Extensive administrative consideration, both at the local and at the appellate level, was granted his request for this status. Secondly, Petitioner sought deferment on grounds of hardship. In January of 1969, the Selective Service Appeal Board classified him 1–A after considering information concerning both his occupational and hardship claims. Petitioner continued to receive searching consideration in his quest for exemption. In the course of this period Petitioner sought for the first time medical exemption. This was denied. In April of 1969 Petitioner claimed conscientious objector status. In consequence, he received a postponement of his induction date of some fifty (50) days. Petitioner received substantial consideration on his claim for conscientious objector status. This included a personal appearance by him before the Board. The claim was denied; and in making this determination the local board declined to reopen his classification. This, if any grimace whatever, is clearly not one of now justiciable *Oestereich* proportions in the totality of the circumstances of this case.

The record and the testimony reflect that Petitioner made his eventual claim of conscientious objection to no small extent in reliance upon the then recent Massachusetts District Court case of United States v. Sisson, 297 F.Supp. 902 (April 1, 1969). Petitioner relies heavily upon it now in brief and argument.

It suffices for the purpose of instant case to note that the opinion in United States v. Sisson, supra, was rendered on the defendant's motion in arrest of judgment pursuant to Rule 34 of the Federal Rules of Criminal Procedure. This simply means that the claim there of conscientious objection was being treated as a defense to a criminal prosecution as contemplated and intended by Section 10(b) (3) of the Selective Service Act of 1967. This procedural distinction is both critical and dispositive. The same fallacy attaches to Petitioner's reliance at this time upon Miller v. United States, 9 Cir., 388 F.2d 973; United States v. Freeman, 7 Cir., 388 F.2d 246; and application of Shapiro, 3 Cir., 392 F.2d 397, wherein the justiciable controversies all arose after induction or the refusal thereof as contemplated by Section 10(b) (3) and its authoritative interpretation.

The District Court in *Sisson*, it is true, dealt with the issue of constitutionality as the Act pertained to the selectee's case in light of the full facts developed during the trial. In the language of the District Court itself, 297 F.Supp., at 906:

"Sisson waited until the administrative process was over because he had no choice. Cf. Clark v. Gabriel, 393 U.S. 256, 259, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968).

"This court waited until the jury had given a guilty verdict because only then did the judge have no choice.

"In Sisson's case the judges have become the first and last before whom the constitutional issues can be effectively raised as a matter of law."

This Court does not feel at liberty to regard *Sisson* as authoritative and binding in its present posture. And it seems plain enough that the mixed questions of law and fact necessarily dealt with by the District Court in *Sisson* would be amply and fairly determinable by a trial jury under appropriate instructions by the trial court all as contemplated by the Act and to the extent permitted by the United States Supreme Court case authorities on the subject.

It is equally clear that the final disposition of *Sisson* as desired or deemed just in that particular case could have been achieved under Rule 29, F.R.Cr.P. which provides for motions for judgment of acquittal both before and after a jury determination.

■ It should be borne in mind that the issue of justiciability, the procedural availability of the controversy for judicial review, trenches upon the very life and effectiveness of a statute which is exigent by nature and imperative to the national defense as judged by the Congress. *Falbo v. United States, supra.* Its provisions are not meant as an invitation to litigious disruption, delay, and circumvention of its necessary purpose. *Oestereich v. Selective Service Board, supra,* 393 U.S. at 238, 242, and 246–248, 89 S.Ct. 414, 21 L.Ed.2d 402.

■ It is to the national legislature, not to the inferior federal courts of Article III creation, that the written Constitution has entrusted the solemn duty to provide for the common defense.

### III.

United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (March, 1963) is cited by Petitioner as, indeed, it is relied on in *Sisson* in argument. *Seeger*, however, likewise arose procedurally out of a criminal prosecution as contemplated by the Act. The *Seeger* principle is that the claim of conscientious objection due to "religious training and belief", Title 50, U.S.C.A. App. Section 456(j), need not arise out of the claimant's identification with or train-

ing by any orthodox religious establishment. The principle is, of course, based upon the freedom of religion guarantee of the 1st Amendment to the United States Constitution. This legal remedy, the assertion of the legal right enunciated in *Seeger*, remains fully available to Petitioner as contemplated by the Act and, indeed, as illustrated in *Seeger* itself. Nor do either allegation or proof here show that constitutional violence was done to the *Seeger* principle by the Board or that its action in the premises warrants legal or equitable intervention now. See: Moskowitz v. Kindt, 3 Cir., 394 F.2d 648, citing this Court's opinion in Muhammad Ali v. Connally, 266 F. Supp. 345 (1967).

### IV.

■ Petitioner additionally challenges the validity of his order of induction on the grounds that the local board was improperly constituted under the provisions of the pertinent Selective Service regulation. Selective Service Regulation Number 1604.52(c) reads as follows:

> "The members of local boards shall be citizens of the United States who shall be residents of a county in which their local board has jurisdiction and who shall also, if at all practicable, be residents of the area in which their local board has jurisdiction."

The proof reveals that each board member is a resident of Harris County, Texas. This satisfies any mandatory character of the regulation as it reads upon its face. The proof revealed that each board member was not resident within the strict territorial limits of the local board. These limits are, in geographical area, smaller than the whole of Harris County itself. The qualification of practicability as to member residency within the territorial confines of the board clearly renders the proviso directory in nature as it reads upon its face. The pleading and proof before this Court do not raise an issue as to any abuse of this regulation with resulting specific prejudice to the Petitioner.

■ Furthermore, any error in the composition of the local board in this case would find its remedy in a proceeding other than this one. This issue under Selective Service Regulation 1604.52 (c) has been recently treated in United States v. Beltran, DC ND Cal., 306 F. Supp. 385 (Cr. No. 42330, July 11, 1969). But the issue there arose in a post order-of-induction judicial proceeding. This Court is addressed to no case authority in which the issue is considered justiciable prior to an order of induction or its equivalent order to mandatory noncombatant civilian duty. Nor could any such case be deemed authoritative in this Circuit at this time. See: Clay v. United States, 5 Cir., 397 F.2d 901, 911 and United States v. Brooks, 6 Cir., 415 F.2d 502 (September 4, 1969) for the proposition that an order of induction by a *de facto* board is not subject to collateral attack.

### V.

■ I find and hold, within the meaning of Jackson v. Choate, 5 Cir., 404 F.2d 910, 912, that there is no doubt that a substantial constitutional question does not justiciably exist in this case. Clark v. Gabriel, supra; Boyd v. Clark, supra; Title 28, U.S.C.A. Sections 2281, 2284. Nor do prior or intervening United States Supreme Court authorities call into question the issue of constitutionality as urged here. See and compare: Schneider v. Rusk, 372 U.S. 224, 225, 83 S.Ct. 621, 9 L.Ed.2d 695; and also: United States v. Seeger, supra, 380 U.S. at 188, 85 S.Ct. 850, 13 L.Ed.2d 733, where it is demonstrated that the case carefully turned on a statutory construction and factual evaluation rather than a pronouncement on the constitutionality of the statute itself.

### VI.

■ It is axiomatic that the writ of habeas corpus does not lie to forestall a pending criminal prosecution. Petitioner's reliance upon Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285, 92 A.L.R.2d 675, is misplaced. Jones v. Cunningham was a post-conviction habeas corpus case. The status of a parolee under a felony conviction is quite different from one who, as here, is not subject to any form of penal custody and has available to him all of the legal remedies that may be raised in defense to a criminal prosecution.

For the foregoing reasons, the Petitioner's prayer for relief must be, and is, in all respects denied. This case is dismissed for want of jurisdiction over the subject matter.

The foregoing constitutes Findings of Fact and Conclusions of Law.

This is and constitutes a final judgment herein.