William Fletcher **GEE,** for himself and all others similarly situated and Mrs. Louise Gee (11–18–69)

v.

Colonel James M. **SMITH,** as Commanding Officer, Armed Forces Induction and Physical Examination Station, Lieutenant General Louis W. Truman, as Commanding General, Third United States Army, Lester G. Maddox, as Governor of the State of Georgia, Colonel Harry Stevens, as State Director, Georgia Headquarters of the Selective Service System, R. W. Dichenight, Dr. L. M. Burrow, and Dr. James P. Westberry, as Members of Local Board No. 62, Fulton County, Georgia; Frances Johnson, as Executive Secretary of Local Board No. 62, and Local Board No. 62, Selective Service System.

Civ. A. No. 13226.

United States District Court
N. D. Georgia,
Atlanta Division.

Nov. 26, 1969.

Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., for plaintiffs.

Charles L. Goodson, U. S. Atty., Beverly B. Bates, Asst. U. S. Atty., Arthur K. Bolton, Atty. Gen., State of Ga., Mathew Robbins, Asst. Atty. Gen., for defendants.

## ORDER

EDENFIELD, District Judge.

This is a preinduction civil action in which plaintiff, a black citizen, seeks an injunction to prevent his induction into the armed forces of the United States, and on behalf of himself and all other black selective service registrants seeks to have the Military Selective Service Act of 1967 declared unconstitutional as applied to those within the class which plaintiff claims to represent.

Plaintiff alleges that his local board has denied him: (1) a student deferment (I–S(C) classification) to which he is entitled by law under Section 6(i) (2) of the Military Selective Service Act, 50 App. U.S.C. § 456(i) (2); (2) a hardship exemption (III–A classification) in violation of the Constitution, the Act, and the regulations; and (3) an appeal from the board's denial of his request for reclassification. The gist of his complaint is that the local draft and appeal boards in the State of Georgia are unlawfully constituted in that they

are composed of disproportionate numbers of white persons and in that, at least as to plaintiff's own local draft board, many of the board members are not residents of the area over which the board has jurisdiction. He contends that the actions of the local board in refusing to reclassify him were racially motivated, and he seeks (1) a declaratory judgment that because of racial and residency defects in the board's composition the Military Selective Service Act of 1967 is unconstitutional as applied to him and to those similarly situated; (2) temporary and permanent injunctive relief to prevent all local draft and appeal boards in the State of Georgia from operating as part of the Selective Service System, and from classifying and inducting black persons, until the boards have been validly reconstituted; (3) an order enjoining Defendant Maddox from using a racially discriminatory procedure when nominating persons for appointment to the boards and directing Defendant Maddox to include among his nominees for each board a number of blacks proportionately equal to the number of blacks residing in the area over which the board has jurisdiction, and (4) temporary and permanent injunctive relief to prevent induction of Plaintiff Gee because of the board's errors in classifying him.

The record shows that in March 1967 plaintiff registered for the draft while he was still a senior in high school, and that on May 17th he was classified I-S(H) by his local draft board pursuant to 50 App. U.S.C. § 456(i) (1) and 32 C.F.R. § 1622.15(a). In September 1967 he embarked upon a course of study at Georgia Institute of Technology and shortly thereafter was classified II-S by his local board. In September 1968 plaintiff withdrew from Georgia Tech and enrolled at Morris Brown College, where he was classified as a first-year student, following which his local board reclassified him as I-A on the ground that he was not satisfactorily pursuing a course of study.[1] Plaintiff requested that he be reclassified II-S and was granted a personal appearance before the board to contest the I-A classification. The board refused to reclassify him and in April 1969 the board's decision to continue him in the I-A classification was affirmed by the appeal board. Shortly thereafter plaintiff was ordered to report for a physical examination, was found qualified, and on July 8th the board issued an order for him to report for induction on July 24, 1969.

Two days before plaintiff was to report for induction the local board received a letter from him explaining that he wished to be reclassified III-A because his mother, upon the advice of her physician, had decided that in the fall she would not return to her former teaching position with the Atlanta Board of Education. He explained also that he was his mother's only son and the only male remaining in the Gee family. On that same day the local board postponed his induction date until August 24th and mailed to him, at his request, a conscientious objector form. Plaintiff failed to report for induction as ordered and on September 2nd the local board again postponed his induction date, this time until September 22nd.

Plaintiff re-enrolled as a student at Morris Brown College on September 17th, and two days later requested reclassification on the ground of hardship. Plaintiff stated that his mother had recently suffered a stroke, that she was physically disabled, that she required his constant presence in order to care for her physical needs, and that they were

---

1. The record shows that plaintiff had not completed 25% of his four-year course of study within the time specified by the regulations, and he appears also to have been on academic probation at Morris Brown. However, it does not appear that plaintiff is contesting that particular action of the board at the present time, and even if he were, since the court holds *infra* that judicial review is inappropriate at this time, the court need not —indeed cannot—address itself to the question of whether there was a basis in fact for the board's action.

unable to pay anyone else to perform the duties for which he was responsible. On September 22nd the board issued an order of postponement of induction pending review of his hardship claim. Plaintiff was requested to submit a dependency questionnaire and other relevant information and to report for a personal appearance on October 14, 1969. This apparently was done, and on the date of the hearing the board also received a letter from plaintiff's mother in which she stated that "it is mandatory for someone to be available to perform personal services for me and * * * [plaintiff] is my only child."

On October 22nd plaintiff was notified that there was no basis in fact for reopening his classification and he was instructed to report for induction on November 6, 1969. Plaintiff notified the board that he was appealing its refusal to reopen his classification and at the same time he requested that he be given a temporary student deferment (I–S(C)) in order that he might complete the academic year at Morris Brown College. The board reminded plaintiff that he had already appealed his I–A classification and informed him that there was no further right of appeal. They also pointed out that since he was not in school at the time his induction order was mailed in July he was not entitled to a I–S(C) deferment.

Plaintiff filed this suit on November 5, 1969, and obtained a temporary restraining order to prevent induction pending a hearing on November 13th. Following that hearing the restraining order was continued pending a ruling on the case by the court and the parties were directed to submit memoranda of authorities by November 17th. For the

reasons set forth below the court finds that the issues which plaintiff seeks to raise in this suit are not appropriate for preinduction judicial review and this court therefore does not have jurisdiction of the issues plaintiff seeks to raise.

## I. PREINDUCTION JUDICIAL REVIEW IN SELECTIVE SERVICE CASES

The power of the courts to review administrative decisions in selective service cases has long been confined within exceedingly narrow limits. Since 1967 the applicable statute, i. e., Section 10(b) (3) of the Military Selective Service Act of 1967 (50 App. U.S.C. § 460(b) (3)), has specifically prohibited judicial review of the classification and processing of any selective service registrant except as a defense to a criminal prosecution instituted under § 12 of the Act (50 App. U.S.C. § 462) *after* the registrant has responded either affirmatively or negatively to an order to report for induction.[2] The statute also provides that when judicial review *is* appropriate (*i. e.*, in criminal trial after registrant refuses to submit to induction, or in habeas corpus proceedings after registrant has been inducted) it "shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant." 50 App. U.S.C. § 460(b) (3). As characterized by the Fifth Circuit, the scope of review of local board action is "the narrowest known to the law."[3]

All courts which have considered the matter have agreed, and the legislative history of the 1967 statute clearly

---

2. A registrant who has responded affirmatively, and who therefore has submitted to induction, may obtain judicial review by means of a petition for the writ of habeas corpus. Congressional recognition of that procedure appears to be implicit in the language of the statute, viz., "the registrant [who] has responded either affirmatively or negatively * * *."

In any event, it is undisputed that § 10(b) (3) does not suspend the writ. *See, e. g.*, Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 238, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968).

3. Robertson v. United States, 404 F.2d 1141, 1144 (5th Cir. 1968).

indicates, that the purpose of the prohibition against preinduction judicial review[4] is to prevent litigious interruptions of the procedures by which this country obtains its necessary military manpower.[5] Even under the less explicit language of earlier draft laws[6] the federal courts had generally recognized that judicial review was not permissible prior to the time a registrant was to be inducted. *See, e. g.,* Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567 (1946). A few courts had not so interpreted the earlier statutes, however, and the legislative history of the 1967 enactment leaves no doubt that the language of the new § 10(b) (3) was intended as an absolute bar to preinduction judicial review.[7]

█ It is evident of course that in performing their duties under the Selective Service Act the boards must faithfully implement the provisions of the statute. Indeed, last term the Supreme Court held that § 10(b) (3)'s absolute prohibition against preinduction judicial review does not apply to cases in which the board has departed from its statutory mandate. Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 238, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). It does not appear, however, that the Court was carving out an exception to the prohibition of § 10(b) (3); rather, it merely said that when the

board's actions are facially unlawful, *i. e.,* violate the express terms of the statute, then the prohibition of § 10(b) (3) is not brought into play.

In *Oestereich* the petitioner was a student at a theological school, preparing for the ministry, and therefore was specifically entitled to, and had been given, a ministerial exemption under § 6(g) of the Selective Service Act, 50 App. U.S.C. § 456(g). Some time later, however, he violated one or more of the selective service system regulations and his local draft board declared him a delinquent under the provisions of 31 C.F.R. § 1642.4(a), which permits such action whenever a registrant fails to perform any duty required of him by the Act or regulations. Thereafter his classification was changed to I–A. The Supreme Court held that the board's action was basically lawless since under the statute the registrant had an absolute right to the exemption which the board later attempted to take away for reasons unrelated to the merits of granting or continuing that exemption.[8] The Court distinguished the "clear departure by the board from its statutory mandate," which was present in *Oestereich*, from situations in which the board must exercise "discretion * * * in evaluating evidence and in determining whether a claimed exemption is deserved."[9] And on the same day *Oestereich* was decided

---

4. As used in this order, "preinduction judicial review" refers to judicial review sought before the date set for the registrant's induction.

5. *See, e. g.,* Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968).

6. Section 10(a) (2) of the Selective Training and Service Act of 1940 provided that decisions of the local boards were final unless an administrative appeal was authorized, in which case the appellate decision was final.

7. Reports from the Armed Services Committees of both the House and the Senate indicate that the committees were disturbed by the fact that a few courts had reviewed classification actions of local or appeal boards before the registrant had

exhausted his administrative remedies. According to the House report: "Existing law quite clearly precludes such a judicial review until after a registrant has been ordered to report for induction and has responded either affirmatively or negatively to such an order. In view of this inclination of the courts to prematurely inquire into the classification action of local boards, the committee has rewritten this provision of the law so as to more clearly enunciate this principle." H.R.Rep.No. 267, 90th Cong., 1st Sess. 7, 30 (1967), U.S.Code Cong. & Admin. News 1967, p. 1308 at 1333.

8. Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 237, 89 S.Ct. 414 (1968).

9. *Id.* at 238, 89 S.Ct. at 416.

the Court denied relief in a case of the latter type, Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968). In *Clark* the Court found that although a conscientious objector is absolutely entitled to exemption (as was the ministerial student in *Oestereich*), the board must exercise its discretion in determining whether a registrant is in fact a conscientious objector within the meaning of the statute (unless that fact is undisputed as in *Oestereich*) and concluded that *Oestereich* therefore required that preinduction judicial review be denied pursuant to § 10(b) (3).

■■ Applying the foregoing to the facts of this case it is evident that plaintiff has presented no claim which would entitle him to preinduction judicial review. A decision as to whether the registrant qualifies for a claimed statutory exemption necessarily requires the board to evaluate the evidence and the board's decision is reviewable only as provided in the Selective Service Act. Clark v. Gabriel, supra at 258, 89 S.Ct. 424.[10]

## II. COMPOSITION OF SELECTIVE SERVICE BOARDS

■ Plaintiff contends that he and others similarly situated are being deprived of various constitutional rights in that the composition of the selective service boards in the State of Georgia is racially disproportionate and in that some members of certain boards are not residents of the areas over which the boards have jurisdiction. Racial imbalance contentions have been made by other petitioners, both before and after refusing to submit to induction, and the contentions have been soundly rejected in every instance. When issues as to board composition have been raised in preinduction civil actions, as in the instant case, they have been dismissed for want of jurisdiction; when they have been raised in criminal or habeas corpus proceedings, they have been held no ground for relief.[11] This argument is foreclosed by the decisions of the Court of Appeals for the Fifth Circuit in Clay v. United States[12] and Simmons v. United States.[13]

## III. RECLASSIFICATION OF SELECTIVE SERVICE REGISTRANTS

Plaintiff Gee contends that under the Selective Service Act he has an absolute right to a I–S(C) student deferment and to a III–A hardship deferment, just as the petitioner in *Oestereich*[14] had an absolute right to a ministerial exemption. It must be noted, however, that in *Oestereich* the petitioner was admittedly a ministerial student and thus met the only requirement imposed by the statute in order to be entitled to the ministerial exemption. There was no issue as to whether he qualified for the exemption; the issue before the Court was whether the board could, for unrelated reasons, take away the exemption to which he was entitled by the express language of the statute. And the answer of course was that it could not; since the board's actions were contrary to the express provisions of the statute, the statute's ban on preinduction judicial review was held to be inapplicable.

10. Nor has plaintiff brought the case outside the ban imposed by § 10(b) (3) by adding his mother as a party plaintiff. The ban on judicial review of the selective service boards' action is absolute, regardless of who brings suit.

11. *Compare* Muhammad Ali v. Breathitt, 268 F.Supp. 63 (W.D.Ky.1967), *and* Muhammad Ali v. Connally, 266 F.Supp. 345 (S.D.Tex.1967), *with* Clay v. United States, 397 F.2d 901 (5th Cir. 1968),

and Simmons v. United States, 406 F.2d 456 (5th Cir. 1969). *See also* United States v. Brooks, 415 F.2d 502 (6th Cir. 1969). *But see* United States v. Beltran, 306 F.Supp. 385 (N.D.Cal., July 11, 1969).

12. 397 F.2d 901 (5th Cir. 1968).

13. 406 F.2d 456 (5th Cir. 1969).

14. Oestereich v. Selective Service System Local Board No. 11, supra n. 7.

In the instant case, plaintiff alleges that he has met the requirements of the statute, but the record does not support these bare allegations with regard to either the I–S(C) or the III–A deferments to which plaintiff claims he is entitled. His selective service board did not, as did the board in *Oestereich*, say in effect, "Yes, we know you have met the statutory requirements but even so we are not going to give you the deferment." Here the board examined the record and determined that plaintiff had *not* met the requirements. If that decision was without a basis in fact plaintiff will be able to obtain relief at the time and in the manner provided by the statute, but § 10(b) (3) precludes *preinduction* judicial review of the board's decision. Oestereich v. Selective Service System Local Board No. 11, supra; Clark v. Gabriel, supra.

■ The court notes that with regard to his claim for a hardship deferment plaintiff contends that he presented to the board sufficient evidence to establish a prima facie case and that the board therefore was required to reopen his classification. Assuming arguendo that a prima facie case was made out, then the board would indeed have erred if it had not reopened the classification, Robertson v. United States, 404 F.2d 1141 (5th Cir. 1968), but the board's actions still would not have been open to judicial review at this time. That is the very procedure which § 10(b) (3) of the Act forbids.[15] And *Oestereich* and *Clark* require the same result, for the board's error in determining the existence or nonexistence of a prima facie case would not violate the express terms of the statute.

■ Plaintiff contends further that when he was allowed to appear before the board while it was considering whether to reopen his classification the appearance was a personal appearance under § 1624.1 of the regulations,[16] which automatically reopened his classification, voided the earlier order to report for induction, and gave him the right to appeal the board's adverse decision under § 1624.2(e) of the regulations.[17] The board's denial of his right to appeal was therefore unlawful, he contends. However, the Selective Service System has specifically said that the regulations upon which plaintiff relies apply only to personal appearances which are a matter of right.[18] Since the Selective Service System's interpretation of the regulations is not plainly erroneous and is not inconsistent with the regulation, it must be given controlling weight. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). The board's action therefore did not violate either the statute or the selective service regulations and cannot be characterized as basically lawless.

Plaintiff next claims that he has an absolute right to a temporary student deferment under 50 App. U.S.C. § 456(i) (2), which provides that deferment must be granted to a registrant who was satisfactorily pursuing a full-time course of study at the time the notice to report for induction was issued *provided* he had not previously received a deferment under certain provisions of the prior Act or under subsection (i) of the current Act.[19] It is evident that this statute im-

---

15. Sloan v. Local Board No. 1, etc., 414 F.2d 125 (10th Cir. 1969).

16. 32 C.F.R. § 1624.1.

17. 32 C.F.R. § 1624.2(e).

18. Before Local Board Under Part 1624 of Selective Service Regulations, Local Bd. Memo No. 52, Issued Jan. 14, 1953, As Amended July 27, 1967, National Headquarters Selective Service System.

19. Plaintiff contends that he is not within the latter exclusion since he has not previously had a I–S(C) deferment (*i. e.*, a deferment under paragraph 2 of subsection (i)). He has, however, had a I–S (H) deferment (under paragraph 1 of subsection (i)), and the statute appears to exclude those who have been deferred previously under any portion of subsection (i). However, this, too, is not an issue which this court must decide.

poses several requirements which must be met before a registrant is entitled to a temporary exemption thereunder and in determining whether plaintiff has met these requirements the board necessarily "exercised its statutory discretion to pass on a particular request for classification, evaluating evidence and * * * determining whether a claimed exemption is deserved." This is precisely the kind of case in which preinduction judicial review is forbidden by § 10(b) (3). Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968).

### IV. SUMMARY

To summarize, plaintiff has sought preinduction judicial review of (1) the local draft board's refusal to reopen his classification to consider a hardship deferment claim, and its contention that he had no right to appeal that decision, (2) its refusal to grant him a temporary student deferment so that he might complete the academic year which he began some three months after his original notice to report for induction was issued, and (3) the allegedly improper constitution of the local and appeal selective service boards in the State of Georgia.

The court finds that § 10(b) (3) of the Selective Service Act of 1967[20] precludes judicial review of any of these issues until after plaintiff has exhausted all administrative remedies and even then review will be available only in the manner specifically set forth in that statute. None of the issues involve actions of the board which violate the express terms of the Selective Service Act and therefore § 10(b) (3) is an absolute bar to this action.

. Accordingly, the temporary restraining order is dissolved and the complaint is dismissed for want of jurisdiction over the subject matter.

20. 50 App.U.S.C. § 460(b) (3).