The **UNITED STATES**, Plaintiff,

v.

Eugene **HAMILTON**, Defendant.

**Crim. A. No. 32100.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Dec. 11, 1970.

Robert L. Livingston, Jr., Asst. U. S. Atty., for plaintiff.

Donald R. Mintz, New Orleans, La., for defendant.

RUBIN, District Judge:

The defendant, Eugene Hamilton, was indicted for failure to comply with an order of his Local Board to report for and to submit to civilian employment in lieu of induction to the Armed Forces of the United States under 50 U.S.C. App. Section 462. After the defendant waived trial by jury, he and the Government submitted this matter on stipulated facts along with evidence previously adduced at the hearing of motions. The defendant then moved for judgment of acquittal on the grounds set forth below:

I. *The Selective Service Regulations deny him the right to be represented by counsel.*

The motion on this ground is denied. The Fifth Circuit Court of Appeals has ruled that the right to counsel in these circumstances is not a right guaranteed by the Constitution. Robert-

son v. United States, 5 Cir. 1969, 417 F. 2d 440. While Robertson was decided before Goldberg v. Kelly, 1970, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, the rationale of Goldberg is not directly applicable here.

II. *Compelling a registrant to perform civilian work in lieu of induction is a violation of defendant's constitutional rights, and, in particular, a violation of his rights under the free exercise of religion clause of the First Amendment of the Constitution of the United States.*

■ The authorities squarely hold that a selective service registrant who has conscientious objections to military service may be required to perform civilian work in lieu of military service without violating his rights under the First Amendment, notwithstanding that his religious scruples prohibit any kind of governmental service. Loewing v. United States, 10 Cir. 1968, 392 F.2d 218; United States v. Boardman, 1 Cir. 1969, 419 F.2d 110, 112. In Elizarraraz v. United States, 5 Cir. 1968, 400 F.2d 898, 906, Judge Godbold, dissenting on other issues, agreed with the majority on this one, summing up the rule as follows:

"There is no constitutional right to exemption from military service or to status as conscientious objector. The United States may *order* the citizen to military service, or to the statutory substitute of acceptable civilian employment in lieu thereof, without violation of First Amendment rights. * * * The conscientious objector can be required to obey notwithstanding his religious principles."

See also Judge Cassibry's unreported opinion in U. S. v. Thorn, Sept. 14, 1970, Cr. Action 32099. It is no less true today than it was in 1905, when Mr. Justice Harlan said for the Supreme Court, in Jacobson v. Massachusetts, 1905, 197 U.S. 11, 29, 25 S.Ct. 358, 362, 49 L.Ed. 643:

" * * * The liberty secured by the 14th Amendment, this court has said, consists, in part, in the right of a per-

son 'to live and work where he will' (Allgeyer v. Louisiana, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832) ; and yet he may be compelled, by force if need be, against his will and without regard to his personal wishes or his pecuniary interests, or even his religious or political convictions, to take his place in the ranks of the army of his country, and risk the chance of being shot down in its defense."

However, this case does not raise that entire issue, "for even if we assume that the First Amendment requires some form of exemption for those conscientiously opposed to military service, it does not follow that Congress must grant a total exemption." United States v. Boardman, *supra*, 419 F.2d at 112. In *Boardman*, the First Circuit stated:

"The Constitution does not extend the same degree of protection to every manifestation of religious impulse. The strict standard which defendant invokes may be appropriate when the government seeks to regulate acts of worship, or to compel conduct which violates a cardinal tenet of religious faith. [See, e. g., United States v. Sisson, 297 F.Supp. 902 (D.Mass. 1969), app. dismissed 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (combat duty in Vietnam) ; Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L. Ed.2d 965 (1963), (denial of unemployment benefits to Sabbatarians) ; In re Jenison, 267 Minn. 136, 125 N. W.2d 588 (1963), (compulsory jury duty).] In this case, however, defendant has been ordered to work in a hospital, an employment in which he has already engaged without violence to his principles. Defendant objects not to the specific conduct which the government requires, but to cooperation with a system which he considers wicked." 419 F.2d at 112, 113.

■ III. *The membership of Selective Service Local Board No. 39, Defendant's Local Draft Board is illegally constituted because 32 C.F.R. sec. 1604.-52(c) has not been complied with and, hence, the action taken by Local Board*

*No. 39 wtih respect to Eugene Hamilton is invalid and illegal.*

The Selective Service regulation was amended on September 2, 1970, and the only residential requirement for Board members at present is that they reside in the same county as the registrant.

But the Selective Service Regulation in effect at the time proceedings were taken in connection with defendant provided:

"The members of the local board * * * shall be residents of a county in which their local board has jurisdiction and *who shall also, if at all practicable, be residents of the area in which their local board has jurisdiction.*" (emphasis added).

Not one of the five members of the defendant's local board was a resident of the area in which it had jurisdiction. There is no claim that it would have been impracticable to select members from among persons resident in its jurisdiction and the stipulation shows that there were at least 500 persons resident in that area who were eligible for membership. Indeed the government offered no evidence that any effort had been made to recruit a Board composed of residents of the area.

The government relies in part on the contention that the regulation quoted above is merely directory. See United States v. Nussbaum, N.D.Cal.1969, 306 F.Supp. 66; and United States v. Kaul, N.D.Cal.1969, 305 F.Supp. 829; Steiner v. Officer in Command, etc., S.D.Tex. 1969, 304 F.Supp. 1157, 1161; Czepil v. Hershey, 7 Cir. 1970, 425 F.2d 251; and United States v. Chaudron, 8 Cir. 1970, 425 F.2d 605. In addition the government contends that the acts of an improperly constituted board are valid because such a board is a *de facto* political authority. See Clay v. United States, 5 Cir. 1968, 397 F.2d 901.

Based on this reasoning, a challenge to the action of a local board because of the lack of proper residential qualifications of some of its members were rejected as a collateral attack on action of a *de facto* board in United States v. Brooks, 6 Cir. 1969, 415 F.2d 502, 505; United States v. Fisher, D.Conn.1969, 307 F.Supp. 7; Cf. Gee v. Smith, N.D. Ga.1969, 306 F.Supp. 891, 896. The regulation itself was interpreted as merely directive in United States v. Reek, 9th Cir. 1970. The Court there cited prior decisions to the same effect in United States v. Chaudron, 8 Cir. 1970, 425 F.2d 605, 611; Czepil v. Hershey, 7 Cir. 1970, 425 F.2d 251, 252. And a failure to show prejudice has been held to defeat a registrant's attack on his Board's composition. United States v. Leavy, 9 Cir. 1970, 422 F.2d 1155; United Stated v. Fisher, D.Conn., 1969, 307 F.Supp. 7.

As the citations already given indicate, a majority of the courts that have considered this question have agreed with the government that the regulations are merely precatory. But at least one circuit court has considered the matter differently. In United States v. Cabbage, 6th Cir. 1970, 430 F.2d 1037, 1041, the court said:

"As we read this regulation it can by no means be treated as purely discretionary. The use of the word 'shall' is mandatory language. The phrase 'if at all practicable' should be read, we believe, as meaning simply 'if there are qualified citizens available for the appointment from the Local Board area.'"

And the court concluded:

"We find it intolerable, however, to send appellant back for reclassification by a board which the United States government has stipulated to be improperly constituted under the Selective Service regulation without any practical remedy for such violation. The principle of administration of the Selective Service system by potential draftees' 'friends and neighbors' is deeply buried in the history of the Selective Service Act. * * *

"In view of its stipulation and the adjudication of the issues hereinbefore set forth in this case, the government

should (and we assume will) move promptly to reconstitute the Selective Service Board concerned in accordance with the applicable regulation. In no event will applicant be subject to reclassification until this is done."

The word "shall" may be used either in a mandatory sense or a directory one and its construction must be determined from the context and the intention of the writer. In a prior case, raising the same issue, this court entered a judgment of acquittal for the defendant. It was my opinion then that that regulation was mandatory, at least to the extent of requiring a reasonable effort to select a Board of residents from the registrant's area. U. S. v. Clinton, 31857, decided April 24, 1970.

The same question has been raised before the Fifth Circuit Court of Appeals in United States v. Collins, 5th Cir. 1970, 426 F.2d 765. The court did not discuss it there, but simply affirmed a conviction on the authority of Clay v. United States, 5th Cir. 1968, 397 F.2d 901 and Du Vernay v. United States, 5th Cir. 1968, 394 F.2d 979. From this cursory disposition, it is not clear whether the Court of Appeals merely found no prejudice, relied on Collins' failure to exercise any administrative challenge, or considered the Board's *de facto* status conclusive.

In the absence of clear authority from this circuit, two factors indicate to me that the original regulation did not state merely a pious platitude. If it did, there would have been no need to change it. But, beyond that, resort to basic grammar demonstrates the contrary. Where the word "shall" is used in a directory sense, it is employed in the sense of "may". But, if we substitute "may" for "shall" in this sentence, it becomes clear that the permissive sense is not intended: If the clause read, "The

members * * * may also, *if at all practicable,* be residents of the area * * *" the words "if at all practicable" would be meaningless. No registrant reading the original regulation could fail to believe that it required some effort to be made to compose the board of local residents.

A government should obey its own law. Men should not be ordered to render what for many of them will be the most significant service of their lives in response to the orders of a board that is not only not composed in accordance with law, but with respect to which the government doesn't even contend it made an effort to conform.

However, a careful review of the Selective Service Record indicates that Hamilton was not prejudiced by the improper constitution of the board, or, to put the matter in words that may be more clear to him, that a change in the board could not possibly help him. For the Board granted the only request that could possibly be supported by the evidence: it classified Hamilton as a conscientious objector. It is true that he said he thought he was a minister, but the record indicates that he was performing no service that could conceivably entitle him to a ministerial classification.[1] For this reason, the motion to dismiss on the ground of illegal composition of the board is denied. For this reason also, it is unnecessary to consider the *de facto* rule See United States v. Beltran, N.D.Cal.1969, 306 F. Supp. 385.

IV. *The government has failed to prove beyond a reasonable doubt that defendant Eugene Hamilton had specific criminal intent to violate the statute.*

The evidence establishes that on January 17, 1969, the defendant was ordered by his local board to report on February 3, 1969 for instructions rela-

---

1. See 50 U.S.C.App. § 466(g); Robertson v. United States, 5 Cir.1969, 417 F.2d 440.

Since in this case there was no evidence that would support such a classification, we need not consider what amount of evidence would have been sufficient: Some basis in fact, substantial evidence, enough to cause reasonable men to differ, a preponderance of the evidence, or some other amount.

tive to employment at Goodwill Industries. On February 3, the defendant went to Goodwill and declined to accept civilian employment there in lieu of military service. Approximately five months prior to that the defendant had signed a written statement to the board that he would not accept any type of alternative service employment because of his religious beliefs. It is manifest that the defendant was aware of his duty to accept alternative service civilian employment and that he deliberately neglected to perform it.

█ The defendant contends that religious principles and not criminal intent motivated his actions. This confounds purpose with intent. No matter how sincere his motives, Hamilton's deliberate failure to perform alternative service is sufficient to violate the law.

For these reasons, the motion to acquit is denied, and the defendant is found guilty as charged.