**Michael Kettel HAGGERTY, Appellant,**

v.

**SELECTIVE SERVICE SYSTEM, LOCAL BOARD NO. 15, PITTSBURGH, PENNSYLVANIA, Appellee.**

No. 71–1262.

United States Court of Appeals, Third Circuit.

Argued June 4, 1971.

Decided Oct. 15, 1971.

**796**

George E. Schumacher, Schumacher & White, Pittsburgh, Pa., for appellant.

Henry G. Barr, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before McLAUGHLIN, ADAMS and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GERALD McLAUGHLIN, Circuit Judge.

Appellant filed a complaint in the United States District Court for the Western District of Pennsylvania with a motion asking that the United States Selective Service System be temporarily enjoined from inducting him into its Armed Services, for a full evidentiary hearing and a permanent injunction to the same effect. The matter was tried on October 15 and 16, 1970. Plaintiff's motion was denied March 17, 1971.

Appellant, then a Michigan resident, registered with the Royal Oak, Michigan Selective Service Board. The latter reclassified him as I–A, March 13, 1969. He was ordered to report for induction on October 16, 1969. He meanwhile had changed his address to Pittsburgh, Pennsylvania and at his request his induction was transferred to Local Board 15 in that city. On December 2, 1969 the Transfer Board ordered him to report for induction December 9, 1969. On that day the doctor for the Local Board, after examining appellant's medical records, noted under "disqualifying effects" that Haggerty had first degree spondylolisthesis of the fifth lumbar vertebra. In that local report if the doctor's comment meant he thought that Haggerty was disqualified from serving in the Army by reason of his particular condition, the doctor was badly mistaken. Army Regulation 40–501 specifically covers the situation, ruling that "The causes for rejection for appointment, enlistment, and induction are * * * Spondylolysis or Spondylolisthesis *that is symptomatic or is likely to interfere with performance of duty or is likely to require assignment limitations.*" (Emphasis supplied). Admittedly Haggerty's condition is not symptomatic and there is not the slightest indication throughout the record, of it

being likely to interfere with performance of duty or to require assignment limitations. Actually, Haggerty has been a member of the Pittsburgh Steelers National Professional Football team for the last four years, at least the last two of which he has been playing offensive tackle. On July 8, 1971, he was traded to the New England Patriots, also a National Football League team, whose general manager announced that the Patriot club was "very happy to acquire Haggerty since he should give us good offensive line depth and could challenge for a starting job." According to Dr. Best, a witness for appellant, the latter was born with the said condition. At the time of the hearing Haggerty was twenty-five years old, weighed 250 pounds and was six feet, four inches in height.

Dr. Best testified that to ascertain a first degree condition it was necessary to have xrays. The xrays which were used here were taken by an xray specialist, Dr. Mazzei. His report addressed to Haggerty's physician, Dr. W. O. Willoughby, states as to Haggerty's condition *"The alignment of the lumbar spine is satisfactory. There is a defect of the pars interarticularis of L–5 with minimal spondylolisthesis of L–5 on S–1. The sacro-iliac joints appear normal."* (Emphasis supplied). There is no claim by Haggerty that Dr. Best ever treated him for anything. Dr. Best is the physician for the Pittsburgh Steelers. He stated that his connection with the Steelers and the Pittsburgh Penguin Hockey team "is about all I do, except practice orthopedic surgery." He is not a Fellow of the American Academy of Orthopedic Surgeons. According to Haggerty, he has never had any treatment for his back except from the Steelers' trainer.

Prior to Haggerty's pre-induction physical examination above mentioned, he had been physically examined for Selective Service on August 18, 1969, at Detroit, Michigan. The medical examiner there knew of his Spondylolisthesis and his medical history and found Haggerty qualified for induction. After the examination of December 9, 1969, the Commanding Officer of the Pittsburgh AFEES station in accordance with the directive of the order of the Secretary of the Army of April 28, 1966, forwarded the Selective Service records regarding Haggerty to the Office of the Surgeon General of the Army for review and thereafter final decision as to Haggerty's acceptability. This procedure was applied to Haggerty because it included "Registrants concerned are defined as: Registrants achieving national prominence by virtue of their personal ability in athletics, * * *." This designation of Haggerty is contested on his behalf because it is claimed that the Steelers at the time had lost nine games. It is also urged that there is no specific statute justifying that sort of processing.

█ The contention that a first string offensive tackle on a National Football League team, one of the most demanding posts in football, could not be of national athletic prominence because his team had lost nine games is frivolous. It is an axiom that on any given day any National League Football team could very well defeat any other League team. At most, the national prominence of an athlete is a question of judgment and in this instance there is strong evidence to support the Armed Services' view. It was also well within reason to consider very carefully whether Haggerty, found to be an athletic personality of national prominence, is medically fit for Armed Forces service. If he is so found then he must be properly inducted and not excused from that service unjustifiably in order that he might play high salaried professional football and so subject the whole Selective Service System to what would be an undeniable charge of favoritism.

█ In the situation we think that the directive of the Secretary of the Army to thoroughly check out nationally prominent registrants as to whether they are acceptable for Armed Services, is clearly within the Secretary's general statutory powers, 10 U.S.C. Section 3012. It is also soundly argued that since the Army is under the authority of the Sec-

retary of Defense (10 U.S.C. Section 3010) and the latter by 50 U.S.C. App. Section 454(a) prescribes acceptability standards for registrants, the final responsibility for the type of directive with which we are dealing is with the Secretary of Defense.

The review of Haggerty's medical records in the office of the Surgeon General was conducted by Lt. Col. Richard Toys and Lt. Col. William Peard, both staff officers and both orthopedic specialists. From the records and on the solid basis in fact above indicated they found Haggerty acceptable for the Armed Services under both 2–36H and 2–43 of Army Regulations 40–501. We agree with appellee that the issue of "vocational waiver" is moot and should not be passed upon here.

■ There is nothing in this record to suggest that the procedure with reference to appellant violated procedural due process of law. The close inspection of Haggerty's physical condition was not only called for by the facts but if it had not taken place it would have been a gravely inequitable lack of investigation of Haggerty's claim. His witness Dr. Best swore that the physical defect was and is first degree, not symptomatic, that it needed an xray to detect it. Dr. Best testified that the stretching over a period was the dangerous element. From his testimony and that of the xray specialist there was no stretching whatsoever in Haggerty's condition in the twenty-four or twenty-five years of his existence. Under the governing Army Regulation Haggerty was fit for Armed Service. There is not one word in the record to the contrary. Haggerty was in no way injured by the following through of the investigative process. To this moment there is no pretension for appellant that he is not in truth acceptable for service. There is no attempt to assert that the Army acceptability for service of the nonsymptomatic first degree spondylolisthesis, which beyond all doubt is all that Haggerty has, is erroneous medically. Whether Haggerty is a football player or not makes no differ-

ence to the only possible honest result in this case. It is passing strange that in the years during which Haggerty has been playing perhaps the most formidable position in professional football, the most attention he has needed has been from the team trainer. All that is now climaxed by Haggerty, within the last few days, joining another National Football Club which was "very happy to acquire Haggerty since he should give us good offensive depth and could challenge for a starting job."

None of the cases cited for appellant touch the obvious facts before us. The closest decision to our problem is Steiner v. Officer in Command, etc., 436 F.2d 687 (5 Cir. 1970). That cause as is the present issue was also governed by 10(b) (3) of the Selective Service Act of 1967, 50 U.S.C.A. App. § 460(b) (3). The pertinent part of the Act reads:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of this Appendix], after the registrant has responded either affirmatively or negatively to an order to report for induction, * * * Provided, that such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant."

In this appeal the applicable Selective Service and Army Regulations procedure was strictly followed. As stated it was of vital importance for the integrity of Selective Service and for the individual Haggerty, that his medical record be examined in depth by the highest Army medical authority. All of the facts affirmatively showed that the first degree spondylolisthesis was a minor ailment that had not developed stretching or other harmful result to Haggerty in all of his years, including those spent in most rugged professional football. The Army Regulations governing statement as to

the kind of spondylolisthesis which renders an inductee unacceptable and that which does not bar acceptability is revealed as a hundred percent correct. All of the medical evidence presented by plaintiff shows that the Selective Service and Army follow up was necessary, was fair and was sound. Appellant was never handicapped in proving anything to the contrary. Judge Gourley in the District Court explicitly insisted on everything that might be helpful to him decisionally be put into evidence. Reading the evidence of the Steelers' doctor and his letters which are in the record, point to him as doing what he could for Haggerty but palpably avoiding any affirmative suggestion that Haggerty was unacceptable physically. Dr. Mazzei, the xray expert, was not only honest but frank. Dr. Willoughby, who Haggerty said was his private doctor, did not even testify. In the circumstances the total evidence is that Haggerty has nothing the matter with him that makes him unacceptable for Service. The quibbling as to whether appellant is promient nationally in sports is quite in line with the sort of claim being urged. There is substantial basis for the Army scrutinizing his acceptability from that standpoint because he is a first string offensive tackle in the National Football League which latter is the most popular sport presentation in the entire United States.

■ We find that the Army acceptability test for inductees with spondylolisthesis is correct, is a proper guideline and was so used. There was no violation of procedural due process.

The judgment of the District Court will be affirmed.

ADAMS, Circuit Judge (concurring).

I concur with the result reached by Judge McLaughlin.

The basic issue in this case—whether a court should enjoin Haggerty's induction into the Armed Services—is governed by the same principles the Supreme Court found controlling in Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed. 2d 418 (1968). Here, Haggerty alleged that the procedure utilized in determining his physical acceptability for service in the Army constituted a violation of procedural due process of law. However, in § 10(b) (3) Congress has deprived the federal courts of jurisdiction to review prior to induction "the classification or processing of any registrant", except as a defense to a criminal prosecution. Selective Service Act of 1967, 50 U.S.C. § 460(b) (3) (Supp. VI 1970). And the Supreme Court has held Section 10(b) (3) to be constitutional, although not applicable where a local board acts in a "blatantly lawless manner". Oestereich v. Selective Service System Local Board, 393 U.S. 223, 238, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). See Breen v. Selective Service Board, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970); Steiner v. Officer in Command, 436 F.2d 687, 688–690 (5th Cir. 1970).

Haggerty, however, is asking that we review prior to induction his classification—the very matter precluded by § 10(b) (3). In order to succeed, then, Haggerty must demonstrate that what transpired was not a part of his pre-induction classification or processing or that his local board clearly departed from its statutory mandate in a "blatantly lawless manner". In this task, appellant has failed.

The heart of Haggerty's objection is that after his re-examination for induction,[1] at which the examining physician informed him of a physically disqualifying condition, his records were forwarded to the Surgeon General, who reversed the determination of the examining physician. These events were crucial stages in the determination whether Haggerty would be inducted, and therefore, come within the scope of that provision of § 10(b) (3) which refers to "processing".

1. Appellant was found fit for service at the first examination, conducted in Detroit. The re-examination was occasioned by appellant's request to transfer the completion of his induction to the Pittsburgh board.

In addition, the records were transmitted in accordance with an order of the Secretary of the Army affecting nationally prominent registrants.[2] Because of the broad grant of authority which Congress has given the Department of Defense and Secretary of the Army, *see* 10 U.S.C. §§ 3010, 3012 (1964); 50 U.S.C. § 454(a) (Supp. VI, 1970), the procedure followed in this case was not "blatantly lawless". Therefore, in this proceeding, we are interdicted from determining the ultimate validity of the order affecting nationally prominent registrants.[3] *But cf.*, Hunt v. Local Board No. 197, 438 F.2d 1128 (3d Cir. 1971).

Further, Haggerty advances the argument that Army Regulation 40–501, ¶ 2–43, which pertains to waivers of physical defects where the registrant has demonstrated in his civilian occupation that he is likely to be able to perform his armed services duties, is invalid because it is not statutorily authorized.[4] However, in view of the statutes cited *supra*, the promulgation of this regulation may hardly be characterized as "blatantly lawless".

Appellant also contends he was denied a hearing before the Surgeon General, and thus deprived of due process of law. However, a hearing is essential only if a registrant's classification is reopened, and reopening of a classification is required only if the registrant makes non-frivolous allegations of fact not previously considered and not conclusively refuted by other reliable information in the registrant's file. Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970). When the examining physician informed appellant that he was not physically qualified and recorded this conclusion on the medical form, he was merely reporting his findings for the use of the local board. The examining physician did not reclassify the appellant. Therefore, despite the examining physician's actions, Haggerty retained his I–A classification. Since appellant was never classified other than I–A, the action by the Surgeon General, reversing the medical findings of the examining physician, was similarly not a reclassification. It follows, therefore, that appellant was not entitled to a personal appearance before the Surgeon General.

Whether the procedures followed by the Selective Service System or whether the Surgeon General's medical findings conclusively refuted the appellant's allegations and the findings of the examining physician may be determined only during a habeas corpus proceeding after induction, or if appellant decides not to report for induction, during a criminal prosecution.

GIBBONS, Circuit Judge (dissenting).

The regulations of the Selective Service System dealing with determination of physical acceptability for induction provide for three separate stages of medical inquiry. These are a Local Board medical interview (32 C.F.R. § 1628.1 (1971)), a pre-induction physical examination (32 C.F.R. § 1628.10) and an induction examination (32 C.F.R. § 1632.-16). The results of these three separate stages of medical inquiry are recorded in Section II—Local Board Medical Interview, Section VII—Determination at Preinduction Examination, and Section VIII —Determination at Induction Examination of DD Form No. 47, Record of Induction. This form is the basic record of the Selective Service System for each registrant.

---

2. The order, contained in a letter from the Adjutant General to various commanding generals, required that the records of nationally prominent registrants who were excused from induction for medical reasons be forwarded to the Surgeon General for final evaluation. Department of Army letter, AGAM-P(M) (4 Apr. 66) EPPAW, dated April 28, 1966).

3. Similarly, we are statutorily prohibited from deciding the fact questions of appellant's national prominence or physical acceptability.

4. There was testimony that the Surgeon General relied in part on this regulation in finding Haggerty fit for duty.

The appellant, a registrant with Local Board No. 323, Royal Oak, Michigan, apparently received a Local Board medical interview in which the Local Board found no disqualifying physical defects. As required by 32 C.F.R. § 1628.3(b) the Local Board listed this finding in Section II of DD Form No. 47. This medical interview is of a cursory nature since neither laboratory nor X-ray work is authorized. 32 C.F.R. § 1628.3(a).

"After completion of the medical interview the local board shall determine, after considering the findings and recommendations of the medical advisor to the local board, whether or not to order the registrant to report for armed forces physical examination." 32 C.F.R. § 1628.4(c).

In case of doubt the local board must resolve the doubt in favor of ordering the registrant to report for a pre-induction physical examination. 32 C.F.R. § 1628.4 (e). The pre-induction physical examination is a prerequisite to the issuance of an induction order, for 32 C.F.R. § 1628.10 provides:

"Every registrant, before he is ordered to report for induction * * * shall be given an armed forces physical examination under the provisions of this part. * * *"

The commanding officer of the examining station is required to forward to the Selective Service System documents reflecting the determination of acceptability of each registrant who receives a pre-induction physical examination. 32 C.F. R. § 1628.25. Upon return of the registrant's records from the commanding officer of the examining station the local board is required to file the DD Form No. 47, on which by this time Section VII, Determination at Pre-induction Examination, has been filled in. If Section VII is filled in "Found not acceptable for induction into the Armed Forces" the registrant must be classified IV–F. 32 C.F.R. § 1622.44.

The Michigan Local Board determined in 1967 that the appellant should report for a pre-induction physical examination. He did so on July 5, 1967, to the Detroit Armed Forces Examining and Entrance Station. At that time he was found to be qualified for induction, and his DD Form No. 47 was filled in accordingly. At that time, however, no change in his student deferred classification (II–S) took place.

In March of 1969 appellant was no longer a student. The Michigan Local Board reclassified him I–A. He thereupon furnished to the Board information, including a letter from a physician, about back trouble which had developed since the 1967 pre-induction physical examination. The Local Board, as was required both by the reopening regulations, 32 C.F.R. Part 1625, and by 32 C.F.R. § 1628.2 conducted a new medical interview, the results of which are recorded in appellant's DD Form No. 47. That form, in Section II—Local Board Medical Interview, under the section requiring a listing of defects known to the local board lists "spondylolisthesis (see old px papers)." On the basis of the Local Board medical interview, the Local Board, as was required by 32 C.F.R. § 1628.4(e), ordered a new pre-induction physical examination. This examination took place on August 18, 1969, at the Detroit Armed Forces Examining and Entrance Station. The result is recorded in appellant's DD Form No. 47, Section VII, as "Found acceptable for induction into the Armed Forces."

The result of this August 18, 1969 examination was not, however, final. Every registrant who is ordered to report for induction is afforded a third medical inquiry, the results of which are recorded on DD Form No. 47, Section VIII—Determination at Induction Examination.

Appellant was ordered to report for induction. Since by this time he was no longer a Michigan resident his induction was transferred to Local Board No. 15 in Pittsburgh, Pennsylvania. 32 C.F.R. § 1632.9. The Transfer Board then issued an Order on December 2, 1969, ordering Haggerty to report for induction on December 9, 1969. When he reported to the Pittsburgh Armed Forces Examining and Entrance Station he entered the

third and final stage of medical inquiry as to his fitness for service. The examining physician determined that appellant suffered from a disqualifying defect. The disqualifying defect was spondylolysis of the fifth lumbar vertebra with first degree spondylolisthesis of L–5 and S–1.

To put the significance of this medical finding in context several administrative regulations must be considered. The first is 32 C.F.R. § 1628.1:

> "The Surgeon General of the Department of the Army shall, from time to time, prescribe or approve a list enumerating various medical conditions or physical defects that disqualify registrants for service in the Armed Forces.
> * * * *"

This regulation of the Selective Service System is issued under the authority of 50 U.S.C. App. § 454(a) (1967) which provides:

> "No person shall be inducted into the Armed Forces for training and service * * * until his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense. * * * *"

The Surgeon General has promulgated regulations for medical acceptability applicable generally to candidates for and inductees into the Armed Forces. Army Regulation (AR) 40–501. The standards in AR 40–501 apply to:

> "2–2(f) Registrants who undergo pre-induction or induction medical examination pursuant to the Military Selective Service Act of 1967. * * * *"

Section XVIII of AR 40–501, Spine, Scapulae, Ribs and Sacroiliac Joints, provides:

> "2–36. The causes for rejection of appointment, enlistment and induction are—
>
> * * * * * *
>
> h. Spondylolysis or spondylolisthesis that is symptomatic or is likely to interfere with performance of duty or is likely to require assignment limitations."

This is precisely the condition which was found by the physician who examined appellant at the Pittsburgh Armed Forces Examining and Entrance Station on December 19, 1969.

Upon finding a disqualifying condition the duty of the examining station, under the governing Selective Service System Regulations, was clear. 32 C.F.R. § 1632.20.

> "(a) The commanding officer of the induction station will return to the local board the following documents concerning registrants forwarded for induction:
>
> (3) For each registrant found not qualified for service in the Armed Forces, the original and one copy of the Record of Induction (DD Form 47), the original Report of Medical Examination (Standard Form 88), one copy of the Report of Medical History (Standard Form 89), and any copy of the Application for Voluntary Induction (SSS Form 254) submitted." [1]

The duty of the Local Board, had it received the documents required to be sent by 32 C.F.R. § 1632.20(a) (3) was equally clear. The regulations, 32 C.F.R. § 1632.20, require that

> "(b) the local board, upon receipt of the documents described in paragraph (a) of this section shall take the following action:
>
> * * * * * *
>
> (3) For each registrant found not qualified for service in the Armed Forces file the original Record of Medical Examination (Standard Form 88), the copy of the Report of Medical History (Standard Form 89) and any copy of the Application for Voluntary Induction (SSS Form 254) in the cover sheet (SSS Form 101) and forward to the State Director of Selective Service the copy of the Record of Induction (DD Form 47)."

Besides forwarding to the State Director of Selective Service a copy of the registrant's Record of Induction (DD Form

---

1. Appellant did not file a Form 254.

47), which in Section VIII would disclose his ineligibility, the Local Board had one remaining duty:

"Upon receiving notice from the induction center that a selected man who had been forwarded for induction has been inducted or finally found not qualified for service in the Armed Forces, the local board shall reopen his classification and classify him anew." 32 C.F.R. § 1632.30

In this case, the appellant having been found disqualified at his induction physical, the reclassification could only have been IV–F. The language of 50 U.S.C. App. § 454(a), that "[n]o person shall be inducted * * * until his acceptability in all respects, including his physical and mental fitness, was satisfactorily determined. * * * is mandatory"

The appellant's case took the normal course until the point where in his induction physical examination he was found to be disqualified. At that point, instead of returning the DD Form 47 and the rest of the file to the Local Board, as 32 C.F.R. § 1632.20 mandated, the assistant adjutant acting for the commander of the Armed Forces Examining and Entrance Station forwarded the entire file to the Chief of Personnel Operations, Department of the Army, in Washington. The letter of transmittal said in part:

"This case is forwarded as required by Letter, AGAM–P(M) (4 Apr. 66) EPPAW, Office of the Adjutant General, Department of the Army, dated 28 April 1966, subject as above."

The reference is to a letter over the signature of the Adjutant General and by order of the Secretary of the Army. It is addressed to various army commanders and provides in part:

"Subject: Preinduction Processing of Selective Service Registrants of National Prominence

1. The following procedures apply to the preinduction processing of registrants of national prominence who are disqualified medically and/or mentally for military service. Registrants concerned are defined as: Registrants achieving national prominence by virtue of their personal ability in athletics, entertainment, business, government, other professions or activities, or who are members of families that are nationally prominent in these areas. Determination of cases to be forwarded to Headquarters, Department of the Army, in accordance with instructions in this letter will be made by the Commanding Officer, Armed Forces Examining and Entrance Station. The Commanding Officer will carefully screen all cases forwarded to Department of the Army to assure that the individual is actually of national prominence.

2. These registrants will be completely processed in the normally prescribed manner except that, prior to dispatch to Selective Service local boards, their records will be forwarded from the continental United States Armed Forces Examining and Entrance Stations through Headquarters, United States Continental Army Command, ATTN: DCSPER–PD, Fort Monroe, Virginia, 23351, to the Chief of Personnel Operations, ATTN:EPPAW, Department of the Army, Washington, D. C., 20310, for review and final determination of medical and/or mental acceptability."

There is no provision in the Military Selective Service Act of 1967, 50 U.S.C. App. § 451 et seq., for a classification "Registrants of National Prominence." There is no provision in 32 C.F.R. Part 1623 for any such classification. The language in the third paragraph of 50 U.S.C. App. § 454(a) "No person shall be inducted * * * until his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense. * * *" cannot be construed as permitting waiver of a determination under such standards in the case of registrants of national prominence. The April 28, 1966, letter does not purport to be a regulation issued by the Secretary of Defense pursuant to 50 U.S.C. App. § 454

(a). It was never published in the Federal Register, in the Code of Federal Regulations, or in the Army Regulations respecting medical fitness.

The April 28, 1966, letter purports to apply only to preinduction processing and not to induction physical examinations which are a distinctly recognized third and final step in the Selective Service System processing. Thus it would appear on the face of the letter that the procedure specified was not even applicable to appellant's file. The examining station has given the letter an interpretation however making it applicable to induction as well as pre-induction physical examinations. If the letter applies to induction as well as pre-induction physical examinations, paragraph 2 dealing with transmittal of records to Washington contravenes the plain language of 32 C.F.R. § 1632.20. Even if the letter is only applicable to pre-induction physical examinations paragraph 2 contravenes the plain language of 32 C.F.R. § 1628.25.

The determination that appellant was a registrant who had "achiev[ed] national prominence by virtue of [his] personal ability in athletics, entertainment, business, government, other professions or activities, or [was] a member of [a] famil[y]" of such a person, was made ex parte by either the commandant or the adjutant of the Pittsburgh examining station. Neither the Pennsylvania Local Board, nor the Michigan Local Board nor the registrant were consulted. As the adjutant's letter of transmittal discloses, the determination was made because the appellant "is currently playing professional football for the Pittsburgh Steelers."

The Chief of Personnel Operations apparently forwarded the file to the Surgeon General of the Army. The authority for this step does not appear in the record. The Surgeon General made a determination that the appellant was medically qualified for appointment, enlistment or induction under UP 2–43, AR 40–501. That part of the regulation, applicable to all Army personnel, appointed, enlisted, or inducted, provides:

"2.43 Vocational Waivers

When an individual who fails to meet the medical standards listed in this chapter has demonstrated in the pursuit of his civilian occupation, profession, or avocation that he is likely to be able satisfactorily to perform the duties of a member of the Armed Forces, the medical examiner may recommend to the Surgeon General of the appropriate service that such an individual be accepted on waivers of medical fitness standards. Such cases shall be considered by the Surgeon General before a final decision is made."

This paragraph, however, must be read in conjunction with the provisions of the regulation dealing generally with waivers. AR 40–501, ¶1–4. That paragraph reads as follows:

"a. Medical fitness standards cannot be waived by medical examiners or by the examinee

b. *Examinees* initially reported as medically unacceptable by reason of medical unfitness when the medical fitness standards in chapters 2, 3, 4, 5, 6, 7, or 8 apply, *may request a waiver of the medical fitness standard* * * * Upon such request, the designated administrative authority or his designee for the purposes may grant such a waiver in accordance with current directives." (Emphasis added)

It is clear that the quoted provision on vocational waivers when read in the light of the general waiver provisions is intended to operate only in favor of those seeking admission to the armed forces and not against those who by virtue of failure to meet the medical standards of the regulations are entitled to be disqualified from service. If construed otherwise the regulation would run afoul of the mandatory language of 50 U.S.C. App. § 454(a) that "[n]o person shall be inducted into the Armed Forces * * until his acceptability * * * has been satisfactorily determined under standards prescribed by the Secretary of Defense." The language does not permit a

construction that would allow involuntary "waiver" of otherwise applicable standards.

The waiver provisions should not have been applied to appellant. He was neither applying for voluntary induction nor seeking enlistment. He could have but did not request a waiver of the fitness standards. But there is no question whatsoever that the Surgeon General's determination was made under the waiver provision, for the January 19, 1970, letter from the Office of Personnel Operations, Waiver Branch, returning the file through the Commanding General, Army Recruiting Command, Hampton, Virginia, to the Pittsburgh examining station reads:

"It has been determined by the Department of the Army that Mr. Michael K. Haggerty is medically qualified for appointment, enlistment or induction UP 2–43, AR 40–501

BY ORDER OF THE SECRETARY OF THE ARMY
    Heino Heinsoo
    LTC, FA
    Chief, Waiver Branch, EPAO, EPD"

The determination of acceptability under the waiver provision is the *only* determination that appears in the records which were returned to the Pittsburgh examining station and untimately on April 30, 1970 to the Transfer Board in Pittsburgh. So far as the records returned to the Selective Service System reveal, there was no change in the determination of the Pittsburgh examining station that the appellant had the disqualifying condition specified in AR 40–501, Section XVIII, 2–36(h).

The Transfer Board in Pittsburgh on May 1, 1970 advised the Michigan Local Board:

"The subject registrant transferred to this Board for induction. He reported for induction on December 9, 1969 and records were held by AFIS pending medical determination.

This date we received the records and notice the registrant has been found qualified for induction.

Please advise if we are to proceed with the induction. * * * "

This letter was only partly accurate, for it did not disclose that appellant had been found to have a disqualifying condition but had been found eligible only under the waiver section. On May 5, 1970, the Clerk of the Michigan Local Board replied to the Pittsburgh Transfer Board:

"Re your letter dated May 1, 1970, please proceed with the induction—this has been outstanding too long."

The Pittsburgh Transfer Board ultimately acted upon this instruction and ordered the appellant to submit to induction. This lawsuit followed.

It seems clear from the Selective Service System file that the Michigan Local Board never knew of the existence of the disqualifying condition or of the fact that appellant had been found acceptable under the waiver provision. It is clear that the Pittsburgh Transfer Board had records showing that appellant had been found to have a disqualifying condition which the Surgeon General agreed to waive. The district court, the majority, and the appellee all urge that these facts should be disregarded because at the hearing in the district court witnesses connected with the Office of the Surgeon General testified over objection that he had in fact been found to be qualified under AR 40–501, ¶2–36. Thus, they contend, we need not concern ourselves with the propriety of applying the waiver provision to an involuntary inductee. The short answer to this contention is that if any such finding was made by the Surgeon General it was never disclosed to the Selective Service System or even to the Pittsburgh Examining Station. The appellant has been ordered to submit to induction on the basis of a finding that the Surgeon General would waive an otherwise disqualifying defect. There is no way of knowing how the Michigan Local Board would have classified the appellant had it known of the disqualifying defect. There is no way of avoiding the fact that the Pittsburgh Transfer Board ordered appellant to submit to induction because the Surgeon

General waived a disqualifying defect. Neither the Pittsburgh Transfer Board nor the Michigan Local Board had any information about the supposed findings of the Surgeon General's orthopedic consultants that appellant was not suffering from a subpart 2–36(h) disqualification, and it is disingenuous to rely upon those findings, disclosed for the first time in the district court, as a justification for the induction order.

But assuming the induction order under attack resulted not from a medical waiver under Subpart UP 2–43 of AR 40–501 but from a finding in the Surgeon General's office that the conclusion of the physician at the Pittsburgh examining station was wrong, appellant still is left with two substantial grounds for due process attack upon the order.

The first ground is the patent invalidity of the authority under which his file was singled out for ex parte appellate medical review. The "prominent persons" letter is not issued on the authority of the President, who by virtue of the Selective Service Act is authorized to prescribe regulations 50 U.S.C. App. § 455.[2] Even if it had been so issued the category of otherwise disqualified "Registrants achieving national prominence by virtue of their personal ability in athletics, entertainment, business, government, other professions or activities, or who are members of families that are nationally prominent in these areas" is on its face so boldly discriminatory, so lacking in discernable standards of selection, so capable of arbitrary application, that it cannot pass due process muster. Under this letter, the commanding officer of an examining station is authorized to make an ex parte selection of files for ex parte medical review with no guidance except his own predelictions. If he reads the sports pages of his newspapers he may select athletes. If he reads the entertainment pages he may select sing-

ers. If he reads the news pages he may select politicians. Or he may select the sons of athletes, of singers or of politicians.

The second ground is that even if, the "prominent persons" letter could pass due process muster the method of ex parte medical review which the letter prescribes subjected appellant to actual and prejudicial discrimination. The discrimination was actual because the file of any other registrant who at the induction physical is found to be disqualified is merely returned to his local board to be reclassified accordingly. It was prejudicial because in the case of a registrant whose medical ineligibility is finally determined at the examining station the physician who makes the determination has the benefit of the registrant's presence and the opportunity to evaluate face to face his subjective and objective symptomatology. In appellant's case the physicians in Washington neither had nor sought any such opportunity. Moreover they did not even have the benefit of a medical history of that symptomatology as of December 9, 1969 because the examining physician at the Pittsburgh examining station recorded only his conclusion, not the appellant's description or his own observation of appellant's symptoms. The disqualification in question is "spondylolysis or spondylolisthesis that is *symptomatic* or is likely to interfere with performance of duty or is likely to require assignment limitations." AR 40–501, § 2–36(h) (emphasis added) With no knowledge of the symptoms suffered by appellant it is difficult to understand how the Washington physicians made the diagnosis which in the district court they claim to have made.

In fact, of course, what they did and what they recorded in the Selective Service System records was to assume the existence of the defect and to waive it. Waiver of the defect was what was re-

---

2. The appellee's brief states "It is conceded that there is no statute or regulation which *specifically* authorizes the Commanding Officer of an AFEES to forward the medical records of a registrant to the office of the Surgeon General for review." Brief for Appellee at p. 10. Appellee and the district court point for authority to 10 U.S.C. § 3010 (1964). This statute is simply irrelevant.

ported back to the Pittsburgh examining station and to the Selective Service System, and waiver of the defect on the ground of appellant's so-called national prominence is the issue with which we are confronted.

The majority would hold that § 10(b) (3) of the Selective Service Act, 50 U.S. C. App. § 460(b) (3) precludes judicial consideration of that issue. For several reasons I do not agree. In the first place that statute is not by its terms applicable to the procedures challenged in this lawsuit.

> "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President. * * *"
> 50 U.S.C. App. § 460(b) (3).

The appellant's complaint challenges a letter issued by the adjutant general and an ex parte medical appellate review by a branch of the Defense Department. § 10(b) (3) does not bar this challenge.

Moreover, even if the "prominent persons letter" and the ex parte medical review are considered to be part of the Selective Service System processing they represent a clear departure from the Selective Service System's own regulations, a violation of the mandatory language of 50 U.S.C. App. § 454(a), and a blatant lawlessness falling squarely within Oestereich v. Selective Service System (393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968)) and Breen v. Selective Service Local Board No. 16 (396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1969)). Indeed the district court held that the complaint alleged violations falling outside the scope of § 10(b) (3) and proceeded to hear the case on the merits.

The district court opinion suggests that the April 23, 1966, letter will pass due process muster because the registrant can present information relevant to his status as a person of national prominence at the examining station. This is plainly not so, for the letter is unpublished and there is no way for a registrant to know that he is going to be or has been singled out for "waiver" treatment. Even if it were so, however,

there would remain the issue whether the Selective Service System may apply different and lower standards of medical acceptability to the vague class of persons defined in the letter.

The fact that in civilian life appellant plays at "one of the most demanding posts in football" does not impress me. Last year, Tom Dempsey, a place kicker with only part of a foot, scored seventy points for the New Orleans Saints. There are, fortunately, numerous examples of individuals who despite the existence of physical handicaps have achieved prominence in their chosen fields of endeavor. That such persons shall be singled out for "waiver" treatment when it comes time for their induction physical examination smacks to me of a press agentry approach to manpower procurement which is unworthy of the Armed Forces of the United States.

I would reverse the order of the district court and remand with directions that an injunction should issue prohibiting the Local Board from ordering the appellant to report for induction on the authority of the decision of the Surgeon General that his disqualifying medical condition may be waived.